■ NOLA REALTY LLC, Appellant, v DM & M HOLDING L.L.C. et al., Respondents, et al., Defendant. [823 NYS2d 137]—

Order, Supreme Court, New York County (Marcy Friedman, J.), entered August 16, 2005, which, to the extent appealed from, denied plaintiff's motion for summary judgment, unanimously reversed, on the law, without costs, the motion granted and the matter remanded for further proceedings, including the entry of judgment.

This is a breach of contract action in which plaintiff Nola Realty LLC, as the seller, and defendant DM & M Holding L.L.C., as the purchaser, entered into a contract of sale for the building designated as 1565 Franklin Avenue, Mineola, New York. The contract provided for a purchase price of $2,275,000, and a down payment of $150,000, which defendants remitted in the form of one bank check and three personal checks, one from each of the individual defendants, Mark A. Plumer, Danielle Plumer and Michele Plumer. The checks were each in the amount of $37,500, and whereas the bank check cleared, the remaining checks were returned because of a stop payment order.

Paragraph 10 of the rider to the contract provides, in pertinent part, that defendant "acknowledge[s] that plaintiff has not made and does not make any representations including but not limited to the physical condition . . . of the subject premises" and "agree[s] to take the premises as is in an 'as is' condition." Paragraph 27 of the rider further provides that: "[w]ithin ten (10) days from the date of this contract, Purchaser shall have the option to conduct a Phase I environmental study of the premises (hereinafter the 'Study'). *In the event the Study shows there is a strong likelihood of or actual contamination on or under the premises in levels that exceed permitted State standards and that said standards require the removal of said contamination*, then if the parties fail to agree on who shall pay the cost to correct said contamination, either party may cancel this contract" (emphasis added).

Defendants thereafter commissioned a "Phase I Environmental Site Assessment," which was conducted on April 1, 2004. The ensuing report states, among other things, that approximately 1,500 square feet of "non-friable" "suspect asbestos floor tile" was observed within a first-floor suite and that based

on the construction date of the building, suspect floor tile may be located beneath the carpeting in the majority of the building. The report, in its "Conclusions and Recommendations" section, provides that "the eventual abatement via removal of the suspect material is recommended," but that, if a decision is reached to leave the floor tile in place, the option of the implementation of an "acceptable Operations and Maintenance (O & M) Program is available." The report, under the heading "Estimated Costs," delineates $4,500 for the two-part abatement/removal of the floor tile, $2,400 for comprehensive asbestos sampling and inspection; and $650 for the implementation of an O & M program.

Defendant, by letter dated April 12, 2004, advised plaintiff that "according to the report, some further studies are required and remediation is necessary with respect to certain conditions." Defendant followed up with a second letter, four days later, which stated that "[i]n the event you do not wish to [remediate the conditions], either you or [defendant] may elect to cancel the Agreement." Plaintiff, by letter dated June 14, 2004, advised defendant that a "time of essence" closing would take place on July 15, 2004, which defendant rejected by letter dated July 14, 2004.

Plaintiff subsequently commenced this action in October 2004, asserting, inter alia, that because defendant failed to take title, it breached the contract and, as a consequence of which, the contract was cancelled, and plaintiff was entitled to retain the down payment as liquidated damages. Plaintiff, as a result, sought the remission, by the escrow agent, of the portion of the down payment that had been collected, and the balance of the down payment, in the amount of $112,500, from defendants. Defendants answered the complaint and interposed two counterclaims seeking: the return of the portion of the down payment held by the escrow agent; and $100,000 in damages arising from plaintiff's "fraudulent concealment of possible asbestos" at the premises.

Plaintiff thereafter moved for summary judgment on the ground that the environmental study did not state, or even imply, that the asbestos discovered in the building "exceed[ed] permitted State standards and that said standards required removal of said contamination" and, as a result, it was not required to perform any abatement pursuant to the terms of the contract. Defendants, in opposition, asserted that the findings contained in the environmental study were sufficient to trigger the condition to cancellation of the contract. In support, defendants submitted an affidavit from the president of the

environmental testing company, whose only statement concerning asbestos that was not a direct quote from the report is "[t]his report specifically references the existence of suspect asbestos at the subject premises."

The motion court denied plaintiff's motion and held that the environmental report, while not explicitly stating that the asbestos in the building exceeded state standards, was sufficient to raise a triable issue of fact as to whether defendants' cancellation of the agreement was warranted. We disagree and reverse.

It is settled that the issue of whether an agreement is ambiguous is a question of law for the courts (*W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]; *Matter of Stravinsky*, 4 AD3d 75, 81 [2003]), and where the parties to a contract have set down their agreement in a clear and complete document, such writing should be enforced according to the terms therein (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004]; *239 E. 79th Owners Corp. v Lamb 79 & 2 Corp.*, 30 AD3d 167, 168 [2006]). The foregoing principle is particularly important "in the context of real property transactions, where commercial certainty is a paramount concern, and where . . . the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length" (*Matter of Wallace v 600 Partners Co.*, 86 NY2d 543, 548 [1995] [internal quotation marks and citation omitted]; *accord South Rd. Assoc., LLC v International Bus. Machs. Corp.*, 4 NY3d 272, 277 [2005]).

In this matter, the agreement provides, in clear and unambiguous language, that in order for the parties to have the right to unilaterally cancel the contract, the environmental study must show that "there is a strong likelihood of or actual contamination on or under the premises in levels *that exceed permitted State standards and that said standards require the removal of said contamination*" (emphasis added). The environmental study, however, makes no such finding and, as an equally efficacious alternative to the removal of the asbestos, delineates a low cost O & M program, which would allow the asbestos to remain in place. Moreover, the president of the environmental testing company, in an affidavit submitted in opposition to plaintiff's motion, also fails to state that the level of contamination exceeded state standards and that state standards required the removal of the contamination.

To the extent that an issue is raised as to whether the individual defendants should be held liable for the remaining down payment, a review of the record reveals that each of the individual defendants undertook that liability in equal amounts of

$37,500 by their tender, to the escrow agent, of personal checks without any indication that they were doing so in a representative capacity (*see* UCC 3-403 [2] [a]; *Kelsol Diamond Co. v Stuart Lerner, Inc.*, 286 AD2d 586, 587 [2001]). Accordingly, the individual defendants are liable.

Finally, defendants' first counterclaim, which seeks recovery of the portion of the down payment held by the escrow agent, should be dismissed for the aforementioned reasons; and defendants' second counterclaim, sounding in fraud, should also be dismissed for failure to plead fraud with the requisite particularity (CPLR 3016 [b]; *Douce v Banco Popular N. Am.*, 8 AD3d 34 [2004]) and as duplicative of their breach of contract claim (*Clark Constr. Corp. v BLF Realty Holding Co.*, 28 AD3d 367, 368-369 [2006]; *Ross v DeLorenzo*, 28 AD3d 631, 636 [2006]). Concur—Mazzarelli, J.P., Marlow, Nardelli, Gonzalez and McGuire, JJ.