*1255 Appeal from an order and judgment (denominated order) of the Supreme Court, Monroe County (Kenneth R. Fisher, J.), entered November 8, 2007 in an action for, inter alia, a permanent injunction. The order and judgment granted plaintiffs’ motion for partial summary judgment on certain causes of action and denied defendants’ cross motion for leave to amend the answer.
It is hereby ordered that the order and judgment so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiffs commenced this action seeking, inter alia, a determination with respect to their rights arising under a certain letter agreement (Agreement), specific performance of the Agreement, and a permanent injunction enjoining defendants from selling or otherwise transferring a patent known as the 331 Patent to any third party. Upstate Systems Tec, Inc. (USTEC), the predecessor to defendant 331 Holding, Inc. (331 Holding), is the owner of two patents for inventions of plaintiff William H. Thompson. The 331 Patent covers a wired communication product, and the 431 Patent essentially improved the technology of the 331 Patent, but it allows for the possibility of a wireless connection. Given the similarity of technologies, the United States Patent Office would grant USTEC the 431 Patent only if USTEC agreed that the 431 Patent would be subject to a “terminal disclaimer.” Pursuant to the terminal disclaimer, the 431 Patent is enforceable only if it is commonly owned with the 331 Patent. USTEC sold all of its assets, with the exception of the two patents, to OnQ/LeGrand, Inc. (LeGrand), and USTEC and, inter alia, the nonindividual defendants, entered into the Agreement, which provides at paragraph 4 (a) that, “Patent No. 331 will remain in USTEC and USTEC will attempt to sell this patent and the Purchasers [the non-individual defendants] will retain all proceeds from such sale to satisfy the outstanding loan obligations due to the *1256 Purchasers after partial satisfaction of the obligations of USTEC to the Purchasers upon completion of the [LeGrand] Transaction. If the sale of Patent No. 331 does not occur by December 31, 2007, then USTEC will sell Patent No. 331, free and clear of all liens and encumbrances of any kind to [NewCo, a newly formed company that initially will be a wholly-owned subsidiary of USTEC] for $1.00 and no other consideration or obligations. USTEC will covenant and agree that any sale of Patent No. 331 prior to December 31, 2007 will not encumber the use of Patent No. 431.” Paragraph 4 (b) of the Agreement provides that, “[concurrent with the initial capitalization of NewCo, . . . Patent No. 431 . . . will be assigned to NewCo, free and clear of all liens and encumbrances of any kind.” NewCo was to be capitalized with $100,000, and plaintiffs were to be elected as sole directors and officers of NewCo.
We note that, at this time, USTEC had been engaged in discussions with another company, Infinity IP Ltd. (Infinity), regarding the possible sale of the 331 Patent to Infinity. Pursuant to the terms of that sale, Infinity would license the 331 Patent back to USTEC so that USTEC could bring out a wireless version of the technology under the 431 Patent. After entering into the Agreement and in attempting to finalize the sale of the 331 Patent to Infinity, it was brought to the attention of 331 Holding that the 431 Patent was subject to the terminal disclaimer and that, if ownership of the two patents were separated, the 431 Patent would be unenforceable during the period of separation. Despite that condition, the sale of the 331 Patent to Infinity moved forward.
Based on their belief that the impending sale of the 331 Patent to Infinity was in violation of the Agreement, plaintiffs commenced this action. They thereafter moved for partial summary judgment on their first, second and fifth causes of action seeking, inter alia, an order directing defendants to place ownership of the 431 Patent in NewCo and a permanent injunction enjoining defendants from assigning, selling or otherwise transferring the 331 Patent to anyone other than NewCo. Defendants cross-moved for leave to amend their answer “to assert affirmative defenses and counterclaims for rescission and reformation based upon mutual mistake,” contending that the parties to the Agreement, including both plaintiffs and defendants, were unaware of the effect of the terminal disclaimer on the ability to separate ownership of the two patents while maintaining the enforceability of the 431 Patent.
In appeal No. 1, we conclude that Supreme Court properly granted plaintiffs’ motion for partial summary judgment and *1257 denied defendants’ cross motion. Contrary to defendants’ contention, the Agreement is not ambiguous. “[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms” (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). “Whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous” (South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 278 [2005]; see R/S Assoc. v New York Job Dev. Auth., 98 NY2d 29, 33 [2002], rearg denied 98 NY2d 693 [2002]). “Thus, if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity” (Greenfield, 98 NY2d at 569-570).
Here, we discern no ambiguity in the language of paragraphs 4 (a) and (b) of the Agreement. The contention of defendants that the Agreement is ambiguous is based on the effect of the terminal disclaimer on the Agreement, but that disclaimer constitutes extrinsic evidence despite the fact that it is part of the 431 Patent. It is well established, however, that “ ‘extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face’ ” (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 163 [1990]; see South Rd. Assoc., LLC, 4 NY3d at 278). Indeed, in our view the crux of defendants’ contention is not that the terminal disclaimer rendered the Agreement ambiguous. Rather, we conclude that defendants are in effect contending that the terminal disclaimer rendered the Agreement impossible to perform. That is not the case, however, because the parties to the Agreement were at the time of its execution under the belief that the 331 Patent could be separately sold and that, by merely giving a license back to the owner of the 431 Patent, use of that patent would not be affected. Moreover, “[impossibility excuses a party’s performance only when . . . the impossibility [is] produced by an unanticipated event that could not have been foreseen or guarded against in the contract” (Kel Kim Corp. v Central Mkts., 70 NY2d 900, 902 [1987]). Here, the terminal disclaimer was an integral part of the 431 Patent and part of the public record. Thus, defendants could have foreseen the effect of the terminal disclaimer on their ability to sell the 331 Patent, or they could have protected themselves against its effect on the sale and NewCo’s use of the 431 Patent (see Estates At Mountainview, Ltd. v Nakazawa, 38 AD3d 828 [2007]). For the same reasons, impossibility does not excuse defendants’ failure to effect an immediate assignment of the 431 Patent to NewCo. The fact that such an assignment would render the 431 *1258 Patent unenforceable could also have been foreseen and guarded against by the manner in which the transaction was structured.
We also reject the contention of defendants that the court should have granted their cross motion for leave to amend their answer in order to seek rescission or reformation of the contract on mutual mistake with respect to the ability to separate the ownership of the two patents. “ ‘While leave to amend should be freely given . . . , a proposed amendment which is devoid of merit should not be permitted’ ” (Nicholas J. Masterpol, Inc. v Travelers Ins. Cos., 273 AD2d 817, 817 [2000]), and that is the case here. “Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties” (George Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 219 [1978]; see M.S.B. Dev. Co., Inc. v Lopes, 38 AD3d 723, 725 [2007]). Here, the record reflects that defendants’ intent in entering into the Agreement was to allow it to finalize the sale of the 331 Patent to Infinity for value, while at the same time transferring the 431 Patent, which was considered to be of lesser value, to NewCo. Plaintiffs’ intent, on the other hand, was to obtain the 431 Patent for plaintiffs’ new company in order to allow that company to “commercialize the 431 Patent,” while at the same time giving defendants until December 31, 2007 to close the sale of the 331 Patent to Infinity, provided that such sale did not encumber their use of the 431 Patent. Negotiations were conducted by sophisticated business persons who were counseled by attorneys, and the unambiguous language of the Agreement accomplishes exactly what plaintiffs intended it to accomplish (see Chimart Assoc. v Paul, 66 NY2d 570, 574-575 [1986]). Although defendants’ intent was thwarted because of the effect of the terminal disclaimer, defendants have established only a unilateral mistake on their part and, absent evidence of fraud on the part of plaintiffs, that unilateral mistake is insufficient to warrant reformation of the Agreement (see George Backer Mgt. Corp., 46 NY2d at 218-219; Yu Han Young v Chiu, 49 AD3d 535 [2008]; Nicholas J. Masterpol, Inc., 273 AD2d at 817-818). Further, with a minimum degree of due diligence, defendants’ mistake with respect to the inability to separate the two patents would have been readily apparent. That factor militates against our invocation of the equitable remedies of either reformation or rescission (see Weissman v Bondy & Schloss, 230 AD2d 465, 467-469 [1997], lv dismissed 91 NY2d 887 [1998]; Gimbel Bros. v Brook Shopping Ctrs., 118 AD2d 532, 535-536 [1986]; see also Estate of Hatch v NYCO Mins., 270 AD2d 590, 591-592 [2000], lv denied 95 NY2d 755 [2000]).
*1259 In light of our determination, we reject the further contention of defendants that the court erred in granting that part of plaintiffs’ motion seeking a permanent injunction enjoining the sale of the 331 Patent to a third party. Plaintiffs demonstrated that they would suffer irreparable harm if the 331 Patent were sold to a third party inasmuch as the 431 Patent would become unenforceable as a result of its terminal disclaimer, and they established that they have no adequate remedy at law because there is no evidence that the 431 Patent in its uncommercialized state has any readily ascertainable value (see generally Data-Track Account Servs. v Lee, 291 AD2d 827 [2002], lv dismissed 98 NY2d 727 [2002], rearg denied 99 NY2d 532 [2002]). We have considered defendants’ remaining contentions with respect to the order and judgment in appeal No. 1 and conclude that they lack merit.
Finally, we conclude with respect to appeal No. 3 that the court’s award of attorneys’ fees to plaintiffs was in all respects proper. Defendants did not request a hearing with respect to the amount of attorneys’ fees sought by plaintiffs and thus failed to preserve for our review their present contention that the amount awarded is unsupported by sufficient documentary evidence and that they are unable to ascertain whether the fees awarded pertained to plaintiffs’ breach of fiduciary duty and tort claims. Further, the court properly awarded the fees incurred during the course of settlement negotiations (see Tige Real Estate Dev. Co. v Rankin-Smith, 233 AD2d 227 [1996]). Moreover, inasmuch as the Agreement expressly allows reimbursement for attorneys’ fees “incurred in connection” with litigation involving that document, it cannot be said that the fees incurred in an attempt to settle that litigation were not in fact a part of that litigation. Present—Scudder, PJ., Hurlbutt, Lunn, Green and Gorski, JJ.