*800 OPINION OF THE COURT
Evelyn Frazee, J.
Plaintiffs, as members of Occupy Rochester,[1] brought this action for a declaratory judgment seeking determination of their rights under a written agreement dated November 10, 2011 (agreement) between the City of Rochester (City) and Ryan Acuff, on behalf of Occupy Rochester. Plaintiffs further seek a declaration that Municipal Code of the City of Rochester § 79-2 (Rochester City Code or City Code) is facially unconstitutional under the First and Fourteenth Amendments to the United States Constitution and under article I, §§ 8 and 9 (1) of the New York State Constitution. Before the court for decision are plaintiffs’ application by order to show cause for a preliminary injunction enjoining the City from requiring plaintiffs to remove their structures and cease use of Washington Square Park (park) after the hours of operation established in City Code § 79-2, and the defendant’s motion to dismiss for failure to state a cause of action pursuant to CPLR 3211 (a) (7).
By way of brief background, individual plaintiffs and others, as members of Occupy Rochester, began in late October 2011 to remain in the park beyond the closing hours set forth in the City Code. This resulted in a number of arrests and then negotiations between representatives of the City and Occupy Rochester leading to the agreement. Based upon the agreement, which allows overnight tent camping under terms and conditions enumerated therein, Occupy Rochester and those associated with this movement maintain tents and other structures in the south end of the park. The City recently advised those associated with Occupy Rochester that the overnight use of the park and the presence of tents and other structures in the park would no longer be allowed after March 11, 2012. Plaintiffs brought this action and order to show cause to challenge the City’s determination and enjoin any enforcement action by the City.
In order to obtain a preliminary injunction, plaintiffs must show a likelihood of success on the merits in the underlying action, that they would be irreparably harmed if the injunction is not granted, and a balance of equities in their favor (CPLR 6301; Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005]). The court will first address the likelihood of suc *801 cess on the merits under the agreement and on the constitutional challenge.
November 10, 2011 Agreement
In addition to setting forth the terms and conditions for use of the park for camping and outside normal hours of operation, the agreement contains the following language: “This Agreement shall extend through January 11, 2012 and shall be renewable for additional periods of two months upon substantial compliance with the terms contained herein and continued safe operation of the Park.” Plaintiffs’ first argument is that under the terms of the agreement, Occupy Rochester is entitled to automatic two-month renewals provided it is in substantial compliance with the terms of the agreement and continued safe operation.
In January 2012, plaintiffs sent the City a formal renewal of the agreement. The City declined to sign the renewal but verbally indicated to plaintiffs that it would not take any action against their use of the park prior to March 11, 2012. The City has now declared it will not renew the agreement and plans to implement enforcement of the City Code provisions which provide closing hours for all city parks and prohibit camping. The City asserts that the lawn in the park needs to be repaired and re-seeded and that the tent encampment restricts public access to and enjoyment of the park. Plaintiffs assert that Occupy Rochester is in substantial compliance with the terms of the agreement and that there is continued safe operation of the park. The City argues that (1) renewal of the agreement is not mandatory under the plain language of the agreement; (2) plaintiffs’ contract interpretation would be unlawful alienation of park land by the City; and (3) even if the City were required to renew the agreement upon substantial compliance with the terms of the agreement, the City should be allowed to decline to renew the agreement because Occupy Rochester has not substantially complied with the terms of the agreement.
The court’s primary objective in contract construction is to give effect to the intent of the contracting parties as reflected in the language they have utilized (see South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 277 [2005]). Contractual terms are to be given their plain meaning (see Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its *802 terms (see Greenfield, 98 NY2d at 569). The proper interpretation of an unambiguous contract is a question of law for the court, and the court is not free to alter the contract to reflect its personal notions of fairness and equity (see Thompson v Mc-Queeney, 56 AD3d 1254, 1257 [4th Dept 2008]).
Applying the above-stated principles, the court concludes that the agreement is clear and unambiguous and permits the City to deny any renewal. The plaintiffs’ assertion that the agreement must be interpreted to provide Occupy Rochester repeated automatic renewals, essentially in perpetuity, if they are in substantial compliance with the terms contained therein, is without merit. If such was the parties’ intention, the agreement could have simply stated that Occupy Rochester could remain in the park as long as there was substantial compliance with the terms contained within the agreement. Rather, by providing that the agreement ended on January 11, 2012, and that it was renewable for additional periods of two months, the language indicates the intention that the City retains the right to deny additional two-month renewals beyond January 11, 2012. Therefore, the court declares that the City has the contractual right under the agreement to deny additional periods of overnight use and camping and to require the removal of structures in the park by plaintiffs and those associated with Occupy Rochester.
This conclusion is further supported in that the interpretation urged by plaintiffs could result in an impermissible alienation of the park without legislative authority from the New York State Legislature. The public trust doctrine provides that dedicated parklands are “impressed with a public trust, requiring legislative approval before it can be alienated or used for an extended period for non-park purposes” (Friends of Van Cortlandt Park v City of New York, 95 NY2d 623, 630 [2001] [footnote omitted]; General City Law § 20 [2]). Alienation occurs “when there is a substantial intrusion on parkland for non-park purposes, regardless of whether there has been an outright conveyance of title and regardless of whether the parkland is ultimately to be restored” (Friends of Van Cortlandt Park, 95 NY2d at 630).
It can be argued that the encampment, as an expression of the views of the members of the Occupy Rochester movement and protected free speech, constitutes a park purpose. While parks can be sites for the exercise of First Amendment rights, and, indeed the park has been used on occasion for this func *803 tion, such is not their primary function nor is their use for such purposes unfettered (see Clark v Community for Creative NonViolence, 468 US 288 [1984]). The park is an urban park with no sanitary facilities and only one electrical source. Clearly, the park is not intended as a camping park, but rather as a place for urban dwellers and workers, as well as others, to find respite. Were plaintiffs’ interpretation of the agreement adopted, the result could be a permanent encampment in the park, to cease only when Occupy Rochester and its members decide to leave. Such a situation would impair use of the entire park by all members of the public. Sustained camping, even if in furtherance of free speech, is clearly not an intended use of the park and such activity could constitute an unlawful alienation (see Williams v Gallatin, 229 NY 248 [1920]). Therefore, the plaintiffs’ interpretation of the agreement is unsupportable.
Based upon the court’s ruling, it is unnecessary to reach the alternative argument raised by the City that there has not been substantial compliance with the terms and conditions of the agreement.
Rochester City Code
The court will now address plaintiffs’ second argument that Rochester City Code § 79-2 (C) is unconstitutional. Relevant sections of the Rochester City Code are set forth as follows:
“§ 79-2. Purpose; use of paths and walks; hours.
“A. The parks of the City of Rochester are for the benefit and pleasure of the public, and every person shall use said parks subject to the ordinances of the Council. The specific purpose of this code is to ensure the safe and enjoyable use of the parks by the public . . .
“C. Unless otherwise authorized by the Commissioner and notice is given by the posting of signs at the parks, the parks shall be closed from 11:00 p.m. until 5:00 a.m. during the summer season, and from 10:00 p.m. until 7:00 a.m. during the winter season; and no persons except authorized employees or persons with written permission from the Commissioner shall enter or remain in said parks while closed. The summer season shall be from April 1 until November 15, and the winter season shall be from November 16 until March 31.”
“§79-11. Permit required for camping.
*804 “No person shall camp in any park without a permit in writing from the Commissioner.”
“§ 79-19. Acts requiring permits.
“A. No person shall commit any of the following acts within a park, except authorized employees or persons with written permission from the Commissioner: . . .
“(4) Deliver any public speech or hold any public meeting, march or parade. Permits for such activities shall not be unreasonably withheld, and the denial of such a permit shall be based solely upon reasonable time, place and manner concerns.”
“§ 79-23. Permits for activities.
“A. The Commissioner is authorized to grant and issue permits for activities authorized in this chapter or under rules and regulations promulgated by the Commissioner. As a condition of granting a permit, the Commissioner may require proof of insurance or a security deposit, in accordance with rules and regulations promulgated by the Commissioner. All permits issued by the Commissioner shall be in writing and shall be signed or authenticated by the Commissioner. All such permits shall be subject to the terms and conditions contained therein, all applicable provisions of this chapter and rules and regulations promulgated pursuant to this chapter and all other applicable laws and ordinances.
“B. Any violation of the terms and conditions of a permit issued hereunder, or of this chapter or a rule or regulation promulgated pursuant thereto, or any other applicable law or ordinance, shall constitute grounds for the immediate revocation of such permit by the Commissioner, which revocation shall be final and without appeal. No permit for the same purpose shall be issued to any person whose permit has been revoked hereunder for a period of one year following the date of such revocation.
“C. This section is not intended to prohibit the casual ad hoc use of park facilities by citizens. However, individuals or groups possessing a valid permit for the use of a park facility shall have preference for such use.
“§ 79-24. Promulgation of rules and regulations. “The Commissioner is authorized to promulgate *805 rules and regulations as may be necessary to effectuate or implement the provisions of this chapter and to provide for the health, safety and welfare of all users of the parks, to regulate activities permitted in the parks and to provide for the orderly issuance of permits and the protection of park property.”
Plaintiffs assert that Rochester City Code § 79-2 (C) is unconstitutional because it is a prior restraint in that it regulates expressive activity in a public forum, it contains no standards to limit or guide the Commissioner, and it provides no opportunity for judicial review of an adverse decision. Plaintiffs further assert that it is over-broad both on its face and as applied, is under-inclusive, and is not narrowly tailored to advance a significant governmental interest.
It is well-settled that even in a public forum, such as the park, the government may impose reasonable restrictions on the time, place and manner of protected speech, provided the restrictions are “justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information” (Clark, 468 US at 293). Restrictions imposed by a government on time, place or manner of speech in a public forum will fail the neutrality requirement if they confer overly broad discretion to the regulating officials (see Forsyth County v Nationalist Movement, 505 US 123, 130 [1992]). Thus, regulations governing speech in a public forum have to contain narrow, objective and definite standards (see Housing Works, Inc. v Kerik, 283 F3d 471, 479 [2d Cir 2002]).
The plaintiffs’ assertion that the City Code fails the neutrality requirement and grants overly broad discretion to the Commissioner to grant or deny a permit for after hours use of city parks is without merit.[2] The “principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys” (Ward v Rock Against Racism, 491 US 781, 791 [1989]). The subject City Code does not seek to regulate messages or distinguish between different types of speech. It simply prohibits, without regard to the identity of the user or the content of speech, anyone from using the parks during overnight hours or from camping in the parks unless a permit is obtained.
*806 The city ordinance does not grant unlimited or impermissible discretion to the Commissioner to grant or deny permission for after hours use of the city parks (City Code § 79-2 [C]) or for camping in the parks (City Code § 79-11). City Code § 79-19 (A) (4) specifically provides that permits for people to “[d]eliver any public speech or hold any public meeting, march or parade . . . shall not be unreasonably withheld, and the denial of such a permit shall be based solely upon reasonable time, place and manner concerns.” Such restrictions are constitutional (see Field Day, LLC v County of Suffolk, 463 F3d 167, 178-180 [2d Cir 2006]).
The subject City Code narrowly focuses on the substantial government interest in regulating the safe use and enjoyment of the parks by all its citizens, protecting the parks from overuse and damage, and providing for the public’s health, safety and welfare (see Clark, 468 US 288 [1984]; Occupy Sacramento v City of Sacramento, 2011 WL 5374748, 2011 US Dist LEXIS 128218 [ED Cal, Nov. 4, 2011]). There are ample alternative channels for communication of information by plaintiffs. They may protest and disseminate information in the park during the permitted hours as well as in other public forums, the Internet, and traditional and social media. Additionally, there is adequate opportunity for judicial review. Plaintiffs’ other arguments have been considered and found to be without merit.
Since no factual issues are raised, defendant’s motion to dismiss is deemed to be a motion for a declaration in the City’s favor (see Matter of Tilcon N.Y., Inc. v Town of Poughkeepsie, 87 AD3d 1148, 1150 [2d Dept 2011]). Rochester City Code § 79-2 (C), in concert with the other relevant provisions of the City Code, is declared constitutional.
Having failed to satisfy the first criteria for entitlement to an injunction, that is, likelihood of success on the merits, plaintiffs’ motion for a preliminary injunction is denied. Since, on the law, the court has declared that the City has the contractual right under the agreement to deny additional periods of overnight use and camping and that Rochester City Code § 79-2 (C) is constitutional, judgment is granted in favor of defendant.

. Occupy Rochester is part of the occupation movement that began on or about September 17, 2011 with Occupy Wall Street.

. Plaintiffs did not apply for any permits but rather rely on the agreement.