WILLIAM J. BROGAN et al., Respondents, v INTERNATIONAL BUSINESS MACHINES CORPORATION, Appellant.

Third Department, May 3, 1990

**APPEARANCES OF COUNSEL**

*Gulling, Schimpf & Taylor (David R. Taylor* of counsel), for appellant.

*Bond, Schoeneck & King (John M. Freyer* and *Arthur J. Siegel* of counsel), for respondents.

## OPINION OF THE COURT

LEVINE, J.

This action was brought by plaintiff William J. Brogan (hereinafter plaintiff) and his wife against defendant, International Business Machines Corporation (hereinafter IBM), for serious personal injuries incurred at IBM's East Fishkill facility in Dutchess County while working in the course of employment for C.B. Strain and Company (hereinafter Strain). Strain, a plumbing and heating contractor, had entered into an agreement with IBM to install a new deionization polishing system in building 322 at that facility. Building 322 is a large structure, some 550 feet long and 325 feet wide. IBM's plant at East Fishkill is an expansive, campus-like facility comprising many buildings with its own private roadways. A portion of the work under the contract required Strain to install four large, multiton deionization tanks in the southeast corner of building 322 as part of the polishing system, entailing the removal of walls and their reconstruction once the installation was completed. The contract document also specifically required Strain to move the tanks from the northwest corner of building 322, where they had been delivered, to the place of ultimate installation at the opposite end of the building. Because of the size of the tanks, however, they could not be moved within the building but had to be transported by a flatbed truck over the facility's interior roadway system for a distance of more than a mile.

On the morning of the accident, plaintiff was assigned to assist in moving the tanks, which were situated in pairs on two steel skids. Transfer to the other end of building 322 was to be accomplished one skid at a time. A crane was used to load each skid on the steel deck of the flatbed truck. Plaintiff was stationed between the tanks on the skid and the back of the truck cab to check clearances between the load and the overhead walkways and trestles en route. There was no slide-resistant material between the steel skid and the steel deck of the truck, nor were there any ropes, blocks or other devices to secure the load. Delivery of the first pair of tanks was accomplished without incident. Because of the narrowness of clearances encountered on the first trip, however, an alternative, somewhat longer route was taken for the movement of the

second set of tanks to their ultimate destination. The truck proceeded slowly with plaintiff again positioned between the load and the cab. As the truck approached the parking area of building 322, it started down a slight decline and then hit a bump or dip in the road and stopped. Upon stopping, the load immediately shifted forward, pinning plaintiff to the back of the cab. Plaintiff subsequently brought this action against IBM, setting forth causes of action based upon IBM's alleged violations of Labor Law §§ 200, 240 (1) and § 241 (6). After joinder of issue and pretrial discovery, IBM moved for summary judgment dismissing the complaint in its entirety and plaintiff cross-moved for summary judgment establishing IBM's liability. Supreme Court denied IBM's motion but partially granted plaintiff's cross motion, holding that liability had been established as a matter of law under Labor Law § 240 (1). This appeal by IBM followed.

█ IBM urges that all of plaintiff's causes of action under the Labor Law should have been dismissed because he was not injured at the work site where the construction, if any, was to take place, i.e., the actual point of installation of the tanks in building 322; instead, the accident occurred on a roadway some distance from the work site during the course of delivery of materials. But, as is now fully established, the lack of proximity between the place of accident and the precise location of construction is not dispositive against Labor Law liability for injuries to workers handling construction materials and equipment *(Sprague v Louis Picciano, Inc.,* 100 AD2d 247, 250, *lv denied* 62 NY2d 605). In the instant case, the accident occurred on IBM's property, the tanks were being moved only from one point to another in the building where the construction was taking place *after* delivery by the supplier, the circuitous route taken was only for logistical reasons and the activity out of which the accident arose was an expressly integral part of the construction contract. Under these circumstances, liability under Labor Law §§ 200, 240 (1) and § 241 (6) is not excluded. The particular work being performed at the time of the accident was part of the construction in that it was on IBM's property, necessitated by and incidental to the construction, and involved materials being readied for use in connection therewith *(see, Sprague v Louis Picciano, Inc., supra; La France v Niagara Mohawk Power Corp.,* 89 AD2d 757, 758, n, *appeal dismissed* 58 NY2d 747; *Struble v John Arborio, Inc.,* 74 AD2d 55, 57; *Ploof v B.I.M. Truck Serv.,* 53 AD2d 750, 751, *lv denied* 40 NY2d 803).

■ Supreme Court also quite properly rejected IBM's contention that its obligation to furnish plaintiff a safe place to work *(see,* Labor Law § 200) was obviated because the accident occurred through the negligent acts of plaintiff's employer, Strain, in failing to secure the load. Plaintiff submitted evidentiary proof in admissible form that several of IBM's representatives were present as the tanks were being loaded, including IBM's project coordinator, who testified at a deposition that he was there to "make sure the hard hats were being worn, the types of straps being utilized, and their procedure on lifting the piece of equipment to the truck". Additionally, IBM's safety technician testified that he had the authority to stop the work if, in his opinion, it was not being carried on in a safe manner. This evidence was sufficient to create an issue of fact as to whether IBM had assumed control over the safety conditions affecting Strain's employees, thus giving rise to liability under Labor Law § 200 *(see, DaBolt v Bethlehem Steel Corp.,* 92 AD2d 70, 72, *lv dismissed, appeal dismissed* 60 NY2d 701).

■ Plaintiff also established a prima facie case for finding IBM liable under Labor Law § 241 (6). That section imposes a nondelegable duty upon owners to provide reasonable and adequate protection to those involved in "construction, excavation or demolition work", but is only self-executing where the plaintiff pleads and proves a violation of a specific standard in the implementing regulations (12 NYCRR part 23) *(see, Simon v Schenectady N. Cong. of Jehovah's Witnesses,* 132 AD2d 313, 316). Plaintiff, in a supplemental bill of particulars, set forth the specific sections of the applicable regulations allegedly violated. The pertinent regulations define "construction work" as *"[a]ll* work of the types performed in the construction, erection, *alteration,* repair, maintenance, painting or moving of buildings or other structures" (12 NYCRR 23-1.4 [b] [13] [emphasis supplied]). The project at IBM's East Fishkill facility easily falls within that definition, as does the task plaintiff was performing, since it involved readying the tanks for installation and was an integral part of the contract for the project *(see, La France v Niagara Mohawk Power Corp., supra,* at 758, n).

■ Finally, we also conclude that plaintiff was properly awarded summary judgment imposing absolute liability upon IBM under Labor Law § 240 (1). Section 240 (1) is designed to

protect workers from hazards related to elevating themselves or their materials at the work site by requiring owners and contractors to furnish and properly employ "hoists, stays * * * blocks * * * braces * * * ropes, and other devices". Both plaintiff and the heavy tanks were elevated on the flatbed truck and their continuing elevation was required throughout the process of moving the tanks to the point of their installation contemplated in this construction project. The height of the elevation was not appreciably different from that found sufficient to invoke Labor Law § 240 (1) protection for workers involved in moving, repairing or installing materials in the course of construction (see, Wright v State of New York, 66 NY2d 452, 459; Cox v LaBarge Bros. Co., 154 AD2d 947 [No. 161], lv dismissed 75 NY2d 808; Klien v General Foods Corp., 148 AD2d 968, 969; Ploof v B.I.M. Truck Serv., supra). Indeed, in one of the cases cited the injuries occurred while the plaintiff's work activity was being performed on a truck (see, Cox v LaBarge Bros. Co., supra). This court has previously held on numerous occasions that section 240 (1) applies to a broader range of elevation-related hazards than that of a worker falling from an elevated height or being struck by a falling elevated object at construction sites (see, e.g., Region v Woodward Constr., 140 AD2d 758, 759-760, lv dismissed 72 NY2d 952; Gregory v General Elec. Co., 131 AD2d 967, 968-969; Dougherty v State of New York, 113 AD2d 983, 985-986). The instability of the elevated load on the flatbed truck and the possibility of its coming into contact with plaintiff in being transported was a clearly related hazard under the case law. Uncontestably, no "blocks * * * braces * * * ropes [or] other devices" whatsoever had been furnished or employed here to safeguard plaintiff from the risk of the injury which occurred. Moreover, plaintiff submitted uncontradicted evidence of proximate cause in the form of admissions by IBM's safety technician that it was precisely the failure to use such devices to secure the load that brought about the accident. Under these circumstances, IBM's absolute liability under Labor Law § 240 (1) was established as a matter of law (see, Zimmer v Chemung County Performing Arts, 65 NY2d 513, 524).

KANE, J. P., CASEY, MIKOLL and YESAWICH, JR., JJ., concur.

Order affirmed, with costs.