OPINION OF THE COURT
Joan A. Madden, J.
Plaintiff, Alfonse Ferrara, moves for an order striking defendant’s affirmative defenses and granting plaintiff summary judgment in his favor. Defendant, Bronx House, Inc., opposes this motion and cross-moves for an order permitting amendment of the answer to include additional affirmative defenses.
THE FACTS
As a result of an accident in defendant’s building on June 30, 1992, plaintiff brought a personal injury action against defendant in December 1992 in Supreme Court, alleging liability under Labor Law §§ 240 and 241. The case was transferred to Civil Court in 1993. Depositions of plaintiff and defendant’s assistant executive director have been held.
According to the deposition testimony and the affidavits in support of the motions, there is no significant dispute as to the following facts. On the date of the accident, June 30, 1992, plaintiff, the crew chief of Lighting for Less (Lighting), pursuant to an oral agreement between Lighting and defendant, went to the auditorium of defendant’s building to change a row of lighting fixtures. Defendant’s mobile scaffold was positioned in the middle of the 50-foot-high auditorium, extending approximately 40 feet. The scaffold, constructed of "sturdy metal” with ladders on both ends leading to a platform surrounded by waist-high bars, had four wheels which were to be locked during its use. Plaintiff, familiar with scaffolds, was to use defendant’s scaffold to perform the contracted-for work. Before ascending the scaffold, plaintiff observed that the wheels of the scaffold appeared locked, and upon shaking the scaffold it appeared stationary to him. Plaintiff then climbed to the platform on top of the scaffold while his co-worker held it. When he reached the platform, his co-worker let go and in plaintiff’s words: "[a]s I moved * * * the scaffold immediately tilted to the left toward the stage, while the right side seemed to move up and off of the ground” (affidavit of Alfonse Ferrara, Apr. 13, 1994, para 12). As it tilted over, plaintiff held on to the scaffold railing and jumped free before it crashed.
Plaintiff alleges that the scaffold toppled over because its *911 wheels were unlocked, and it was not fastened to the wall. Defendant argues that the cause of the accident is unclear, that plaintiff contributed to the cause of the accident, that the defendant is not liable under Labor Law § 240 (1), and that this case is not ripe for summary judgment.* In support of its position, defendant submits an affidavit by an engineer who states in substance it cannot be ascertained that unlocked wheels caused the scaffold to fall; reasons unrelated to safety components could have caused the accident; and that no requirement exists that a mobile scaffold be fastened to the wall. Plaintiff submits no expert opinion in support of his motion.
Plaintiff further moves to strike the six affirmative defenses interposed by defendant. The first four allege culpable conduct by the plaintiff; the fifth that defendant was not negligent; and the sixth that the action falls into an exception of the Labor Law.
THE LAW
Labor Law § 240 (1) provides, in relevant part, as follows: "All contractors and owners and their agents * * * in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding * * * and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.” "The legislative purpose behind this enactment is to protect 'workers by placing "ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner” * * * instead of on workers, who "are scarcely in a position to protect themselves from accident” (Koenig v Patrick Constr. Co., 298 NY 313, 318)’ (Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520).” (Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991].) Moreover, it is settled that section 240 (1) " ' "is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed”. (See Quigley v. Thatcher, 207 N. Y. 66, 68.)’ (Koenig v Patrick Constr. Corp., 298 NY 313, 319.)” (78 NY2d, at 513, supra.) "Thus, we have interpreted the section as imposing *912 absolute liability for a breach which has proximately caused an injury. Negligence, if any, of the injured worker is of no consequence * * * In furtherance of this same legislative purpose of protecting workers 'against the known hazards of the occupation’ * * * we have determined that the duty under section 240 (1) is nondelegable and that an owner is liable for a violation of the section even though the job was performed by an independent contractor over which it exercised no supervision or control”. (Rocovich v Consolidated Edison Co., 78 NY2d, at 513, supra.)
As the Court of Appeals has stated "[t]he policy purpose underlying Labor Law § 240 is to impose a 'flat and unvarying’ duty upon the owner and contractor despite any contributing culpability on the part of the worker.” (Bland v Manocherian, 66 NY2d 452, 461 [1985].) Accordingly, contributory negligence is not a defense and the first four affirmative defenses which assert that plaintiff’s injuries are attributable, in whole or in part, to plaintiff’s conduct or assumption of the risk are struck. (Supra; Zimmer v Chemung County Performing Arts, 65 NY2d 513, supra.)
 Defendant’s fifth affirmative defense which alleges defendant was not negligent is also struck. Section 240 imposes liability even where an owner "exercised no supervision, control or direction of the work being performed” (Haimes v New York Tel. Co., 46 NY2d 132, 134 [1978]). And finally, the sixth affirmative defense alleges that "this case falls within one or more of the exceptions set forth under the Labor Law.” Defendant fails to specify the exception on which it relies arguing the defense should not be stricken because "defendant complied with its obligations under § 240” (affidavit of Kathryn Christ, May 12, 1994, para 43). Absent such specification, the defense is struck.
In actions brought under section 240 (1), in order for plaintiff to establish an entitlement to judgment in his favor as a matter of law, he must submit proof in evidentiary form that defendants violated the statute and that the violation was a proximate cause of his injury (Rocovich v Consolidated Edison Co., 78 NY2d, at 513, supra). While neither side has outlined the issue with precision, it appears to the court that the central issue is whether a scaffold standing 40 feet in the air is "constructed, placed and operated as to give proper protection to a person so employed” (Labor Law § 240 [1]) when the entire scaffold topples over.
*913 Initially, the court notes that Labor Law § 240 (1) relates to gravity related accidents, that is, its design is "to prevent those types of accidents in which the scaffold * * * proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity ”. (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501 [1993].) The function of a scaffold is to provide a structure from which work requiring elevation may be performed safely. By its nature, a scaffold serves as an access to elevated work areas, and its structure must be such that the access to and the work areas themselves are stable and secure. The core objective of section 240 (1) is to prevent injuries to workers from the special hazards that arise when the worksite is elevated. (Supra.) Violations of the statute include defects in design, construction, operation and placement of the scaffold. In the instant case, while the specific cause for its fall is undetermined, it is undisputed that plaintiff was on the platform of the scaffold as it tilted and toppled over on its side. The only inference to be drawn is that the scaffold was unsafe, i.e., defective, and therefore the defendant violated its duty under section 240 (1), and that this violation was the proximate cause of the plaintiff’s injuries.
The underlying facts fall into the category of cases in which the violation of the statute is evident in the nature of the accident. Thus, where an accident results from the placement of a scaffold, or where the scaffold collapses, or breaks, a violation of the statute is apparent and liability of the defendant has been upheld. (Limauro v City of N. Y. Dept. of Envtl. Protection, 202 AD2d 170 [1st Dept 1994] [summary judgment for the plaintiff was upheld where the placement of the ladder next to an open slot in the floor caused plaintiff’s injury]; Van Guilder v Sands Hecht Constr. Corp., 199 AD2d 164 [1st Dept 1993] [summary judgment was affirmed based on plaintiff’s uncontradicted testimony that the scaffold collapsed after the plaintiff rocked the scaffold in an attempt to move it]; Rocha v State of New York, 77 Misc 2d 290, 296, affd 45 AD2d 633, Iv denied 36 NY2d 642 [scaffold was held to be unsafe and in violation of section 240 (1) where a plank on the scaffold broke, causing the plywood covering to give way and the plaintiff to fall].)
In opposing this motion for summary judgment, defendant argues that plaintiff has failed to submit evidence establishing that the scaffold lacked safety equipment which would have prevented the accident. Defendant’s arguments fail to *914 consider the operative fact in this case: the worker did not fall off the scaffold, but the scaffold itself fell over. This operative fact distinguishes it from the situation in which a worker falls off a scaffold. In such a situation the court must have sufficient facts to determine the proximate cause by analyzing the relationship between the cause of the worker’s fall, his actions, and the safety equipment required by statute. (See, e.g., Nohejl v 40 W. 53rd Partnership, 205 AD2d 462 [1st Dept 1994], affg Nohejl v 40 W. 53 St., Sup Ct, NY County 1993, Cahn, J., index No. 9224/88 [plaintiff denied summary judgment as questions of fact existed, regarding the interrelationship between plaintiff’s fall off the scaffold, the applicability of the statute mandating side rails or other restraining devices, and questions regarding the condition and use, if any, of the wheels’ locking devices]; Pastoriza v State of New York, 108 AD2d 605, 607 [1st Dept 1985] [plaintiff denied summary judgment because of "insufficient detail as to the work being performed by decedent at the time of the fall and which make it impossible to determine what devices were needed so 'as to give proper protection to a person so employed’ ”].)
In his supporting affidavit, defendant’s engineer, who never examined the scaffold, but who reviewed the pleadings and deposition testimony, concludes in part that the scaffold had all the safety components required by statute. The particular safety components enumerated in the expert’s opinion, "guardrails, ladders, lockable wheels and outriggers” (affidavit of Harlan Fair, May 12, 1994, para 4), are relevant, as indicated above, when a worker falls from a scaffold, and the sufficiency of the safety devices are essential to determine the proximate cause of the accident. Under the circumstances herein, where the scaffold itself toppled over, the issue is the inherent safety of the scaffold itself, not the sufficiency of the safety devices.
Defendant’s expert continues, addressing possible causes of the accident, stating that "it is not certain that [the unlocked wheels] would have caused the accident to happen. [And that] * * * the accident could have been caused by any number of reasons not related to a lack of safety components. One possible cause of the accident is misuse of the scaffold and the failure to utilize the safety mechanisms provided” (affidavit of Harlan Fair, May 12, 1994, para 5). The affidavit is silent as to the specific safety mechanisms not utilized, the basis for his opinions, any coherent theory as to the cause of the accident, or any relationship between the locking or unlocking of the *915 wheels and the toppling of the scaffold. Absent such nexus or specification, the argument is without merit. These facts are distinguishable from Nohejl v 40 W. 53rd Partnership (supra) where such nexus and specifications were alleged. It was the movement of the scaffold which caused Nohejl’s fall, and questions existed as to whether the locking devices of the wheels of the scaffold, which presumably would have prevented the movement of the scaffold, were not used or were defective.
Similarly, defendant’s expert fails to state the type of misuse which would have caused the 40-foot scaffold to topple, and there are no facts before this court of any misuse of the equipment. The affidavit as a whole appears tailored to comply with the statutory requirements by tracking in part the language of section 240 (1), and stating conclusions and speculations without any evidentiary foundation.
Defendant also argues that if unlocked wheels caused the accident, plaintiff was at fault for failing to lock the wheels as instructed. This argument, recognized as the recalcitrant worker defense, "requires a showing that the injured worker refused to use the safety devices that were provided by the owner”. (Gordon v Eastern Ry. Supply, 82 NY2d 555, 563 [1993].) In order for defendant to avail itself of this defense, it must establish a nexus between the alleged unlocked wheels and the toppling of the scaffold. Indeed, defendant’s own expert states that it is uncertain that unlocked wheels would have caused the scaffold to topple over. Having failed to present any evidence of this essential causal connection, defendant’s position is unsupported.
Even if this nexus were shown, to support this defense defendant would also have to show that plaintiff refused to utilize a "safety device” as opposed to engaging in an unsafe practice (Gordon v Eastern Ry. Supply, 82 NY2d, at 563, supra). It is unclear whether the wheel locking device is a safety device within the meaning of the statute. (Compare, e.g., Nohejl v 40 W. 53rd Partnership, supra [Court discussed the wheel locks as a safety device]; Van Guilder v Sands Hecht Constr. Corp., 199 AD2d 164, supra [Court affirmed grant of summary judgment to worker who intentionally did not lock the wheels in order to move the scaffold], and Magee v Cenacle Props., NYLJ, Nov. 10, 1992, at 30, col 4 [Sup Ct, Suffolk County] [plaintiff granted summary judgment and liability found under section 240 (1) wherein plaintiff explained "that it was not customary to lock the wheels while working so that *916 the scaffold could be moved without dismounting by merely shifting one’s weight, a process known as " 'skateboarding’ ”].) However, here it is uncontroverted that plaintiff did not refuse to lock the wheels, but thought that the wheels were locked and he shook the scaffold to make sure it was stationary.
Accordingly, the "recalcitrant worker” defense is inapplicable to the facts herein. Defendant has not established, and the case law is unclear, as to whether the locking mechanisms are a safety device. Furthermore, defendant has not demonstrated that there exists any nexus between the locking mechanism of the wheels and the accident, and that the plaintiff refused to use the locking mechanism.
CONCLUSION
For the reasons set forth above, plaintiff’s motion to strike defendant’s affirmative defenses and for summary judgment on the issue of liability under Labor Law § 240 (1) is granted. Defendant’s motion to amend its complaint to include an affirmative defense regarding a reduction of damages by the amounts received by plaintiff from collateral sources is granted, and is otherwise denied.

 Plaintiff argued, and defendant rebutted, that section 240 (2) requires that a mobile scaffold be attached to the wall. The court did not reach the merits of this argument, as it held defendant liable under section 240 (1).