■ MICHAEL J. DANKULICH et al., Appellants, v FELCHAR MANUFACTURING CORPORATION, Defendant and Third-Party Plaintiff-Respondent. ACCU AIRE COMFORT SYSTEMS CORPORATION, Third-Party Defendant-Appellant et al., Third-Party Defendants. [668 NYS2d 769] —Yesawich Jr., J. Appeal from an order of the Supreme Court (Coutant, J.), entered August 13, 1996 in Broome County, which, *inter alia*, granted defendant's cross motion for partial summary judgment dismissing plaintiffs' Labor Law § 240 (1) cause of action.

Plaintiff Michael J. Dankulich (hereinafter plaintiff), an air conditioning technician employed by third-party defendant Accu Aire Comfort Systems Corporation (hereinafter Accu Aire), was injured when he jumped approximately seven feet from the platform of a motorized lift. As plaintiff was piloting the lift—which he had been using to place air conditioning equipment on the roof of one of defendant's buildings—up a ramp toward his next work location, the lift suddenly lost power and rolled backward down the ramp. Discovering that he had no means of steering or stopping the runaway lift, and aware that it was inexorably approaching a steep embankment leading to a road approximately 100 feet below, plaintiff leaped from the lift, allegedly sustaining personal injuries. The lift ultimately came to a stop when it struck a tree.

Plaintiff and his wife, derivatively, commenced this action charging defendant with, *inter alia*, breach of the absolute duty imposed by Labor Law § 240 (1), and defendant in turn brought third-party claims against Accu Aire, the lift manufacturer and others. When plaintiffs applied for summary judgment on their Labor Law § 240 (1) cause of action, defendant cross-moved for summary relief and Accu Aire sought dismissal of the third-party complaint. Supreme Court denied plaintiffs' motion, as well as that of Accu Aire, but granted defendant's cross motion. This appeal by plaintiff ensued.

The activity in which plaintiff was engaged when the lift malfunctioned, namely, moving necessary equipment from one worksite to another, was plainly incidental to and an integral part of the work he was performing on defendant's buildings (*see, Covey v Iroquois Gas Transmission Sys.*, 218 AD2d 197, 198-199, *affd* 89 NY2d 952; *Orr v Christa Constr.*, 206 AD2d 881; *Brogan v International Bus. Machs. Corp.*, 157 AD2d 76, 79); and that activity, the installation of air conditioning equipment, was an "alteration" within the meaning of the statute (*see, Perez v New York City Indus. Dev. Agency*, 223 AD2d 628, 629).

Further, location of the driving controls on the lift required that plaintiff ride on the lift platform, approximately seven feet above the ground, while moving the apparatus, and thus that he be exposed to the gravity-related hazard of falling (*see, Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501; *cf., Pritchard v Murray Walter, Inc.*, 157 AD2d 1012, 1013). When the lift malfunctioned, losing power, steering and brakes, and began to roll uncontrollably down an incline, it no longer served its " 'core objective' " of preventing plaintiff from falling from his elevated perch (*Gordon v Eastern Ry. Supply*, 82 NY2d 555, 561); indeed, it was precisely because of this inadequacy that plaintiff sustained the injuries he apparently did.

In our view, the peril to which plaintiff was exposed is not of a type ordinarily encountered at a construction site (*cf., Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 491), but is more akin to the danger posed by a scaffold that is improperly constructed or placed, and as a result tilts or begins to roll from the worksite, causing a worker to fall therefrom (*cf., Ferrara v Bronx House*, 163 Misc 2d 908, 914-915; *compare, Borowicz v International Paper Co.*, 245 AD2d 682). Notably, the lift platform, which was not equipped with a seat and obviously was not intended to be "driven" any significant distance, had, in these respects, more in common with a wheeled scaffold or ladder than a truck or bulldozer. Moreover, the risk of falling from this device—whether it is stationary or in motion—is manifestly greater than that arising from the operation of a typical vehicle or piece of construction equipment. Nor are we persuaded that plaintiff is barred from recovering purely because, when confronted with the dangerous predicament that the lift was quickly drawing near the embankment, he opted to jump rather than risk what he perceived to be more serious consequences (*see, Sherman v Piotrowski Bldrs.*, 229 AD2d 959, 959-960; *Camillo v Olympia & York Props. Co.*, 136 Misc 2d 315, 318-319; *cf., Gordon v Eastern Ry. Supply, supra*, at 562).

Peters and Spain, JJ., concur.

Carpinello, J. (dissenting). In our opinion, Supreme Court properly dismissed the Labor Law § 240 (1) cause of action; accordingly, we respectfully dissent. Labor Law § 240 (1) affords legal protection to workers who require specialized protective devices because of their exposure to the particular hazards resulting from work-site elevation differentials (*see, Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500-501; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514-515). No liability results under this statutory scheme unless the worker's

injuries actually resulted from the type of risk that brought about the need for a protective device in the first instance (*see, Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 490).

At the time of his injury, plaintiff Michael J. Dankulich (hereinafter plaintiff) was not using the motorized platform lift, which was totally compressed, in an elevation-related task; rather, he was using it as a mode of transportation from one point on the worksite to another. Although the configuration of the lift required its operator to be seven feet from the ground, this hazard was only tangentially related with the effects of gravity (*see, Ross v Curtis-Palmer Hydro-Elec. Co., supra*, at 501). Plaintiff faced the same risk of injuring himself if he was driving any other type of malfunctioning piece of construction equipment, such as a bulldozer or a dump truck. Indeed, it is impossible to envisage what possible safety device could have prevented the peril to which plaintiff was exposed—a stalled motorized vehicle rolling backward toward an embankment—or his ensuing injuries.

While the majority states that the peril to which plaintiff was exposed is akin to the danger posed by a scaffold that is improperly constructed or placed, it was not the "platform" portion of the lift that malfunctioned; rather, it was an apparent problem with the motorized equipment itself. By virtue of the majority's reasoning, anyone driving a large piece of construction equipment on a worksite who, because it malfunctions, jumps or falls off it would now be entitled to protection under Law Labor § 240 (1), resulting in an unprecedented and unwarranted extension of the statutory scheme.

In short, plaintiff was not injured because of the absence of any safety device on the motorized platform lift; he was injured because the lift malfunctioned while it was being driven from one location to another. That plaintiff happened to be several feet above ground level when he attempted to jump to safety does not transform this accident into a Labor Law § 240 (1) claim.

Crew III, J. P., concurs. Ordered that the order is modified, on the law, with costs to plaintiff, by reversing so much thereof as granted defendant's cross motion for summary judgment dismissing the Labor Law § 240 (1) cause of action and denied plaintiffs' motion for summary judgment on said cause of action; cross motion denied and motion granted, and plaintiffs are awarded partial summary judgment on the issue of liability on said cause of action; and, as so modified, affirmed.