(February 16, 2017)

■ ROBERT GERRISH, Appellant, v 56 LEONARD LLC et al., Respondents, et al., Defendant. [48 NYS3d 32]—

Order, Supreme Court, New York County (Barbara Jaffe, J.), entered April 28, 2015, which, insofar as appealed from as limited by the briefs, granted the motion of defendants 56 Leonard LLC (56 Leonard) and Lend Lease (US) Construction LMB Inc. (Lend Lease) to dismiss plaintiff's Labor Law § 241 (6) claim as against them, reversed, on the law and the facts, without costs, and the motion denied.[1]

Plaintiff, Robert Gerrish, sustained injuries when, while working as an ironworker, he tripped and fell on debris at a work site. At the time of the accident, he was working at a yard in the Bronx, where he was bending and cutting steel rebar to be used for the construction of a new building located at 56 Leonard Street in downtown Manhattan. 56 Leonard was the property owner and Lend Lease was the construction manager. Lend Lease, "[a]cting solely as agent for [56 Leonard]," subcontracted with defendant Collavino Structures, LLC (Collavino) as the superstructure concrete contractor pursuant to a Trade Contract dated February 13, 2012. Collavino in turn subcontracted with plaintiff's employer, nonparty Navillus Tile, Inc. (Navillus), to "receive, bend and install all rebar required for said project." The Collavino/Navillus subcontract further provided that "Collavino will provide all trucking for bent rebar

---

1. Plaintiff is not appealing the dismissal of the common-law negligence and Labor Law §§ 200 and 240 (1) claims.

from Bronx yard to the site." It also incorporated by reference numerous other contracts involving defendants, but which are not part of the record and, therefore, are not currently before this Court.

The Trade Contract provided, inter alia, in Schedule 3—"Temporary Facilities"—that "[a]ll temporary Project site facilities and storage, sheds, shanties, material storage rooms, field offices, power, hoists, scaffolding, cold weather protection, etc. ('Temporary Facilities') required in performing the Work shall be furnished by Contractor [Collavino]. *Contractor agrees to furnish, at Contractor's expense, sufficient Temporary Facilities for the efficient performance of the Work. Contractor agrees to place its Temporary Facilities in locations designated by Owner or Construction Manager*. When it becomes necessary, in the opinion of the Construction Manager, for Contractor to provide Temporary Facilities, Contractor will do so in an expeditious manner and at no additional cost . . . ." (Emphasis added.)

Thereafter, Collavino leased a portion of a work site in the Bronx (Bronx Yard) from nonparty Harlem River Yard Ventures, Inc. (Harlem River). Pursuant to that Temporary License, the only work Collavino was to carry out at the yard was in connection with "a construction site in Manhattan." Collavino could not perform any other type of work at the Bronx Yard without first obtaining prior written approval from Harlem River. Plaintiff's employer was not a party to the Temporary License or the Trade Contract.

Plaintiff commenced this action against defendants, alleging, inter alia, a violation of Labor Law § 241 (6).

Labor Law § 241 (6) provides, in relevant part, that "[a]ll contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements: . . . 6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

56 Leonard and Lend Lease moved to dismiss the complaint against them pursuant to CPLR 3211 (a) (1) and (7), arguing that Labor Law § 241 (6) did not apply because, at the time of his accident, plaintiff was fabricating "steel rebars at an offsite temporary project facility in the Bronx . . . for a construction project located at 56 Leonard Street in Manhattan," and, therefore, this did not constitute work at a construction site, as

required by the statute. The motion court agreed, citing *Flores v ERC Holding LLC* (87 AD3d 419 [1st Dept 2011]). We disagree and reverse, finding that *Flores* is distinguishable.[2] In *Flores*, the plaintiff was injured while working at *"his employer's Bronx facility"* (emphasis added), which was leased *by his employer* for the "storage of its equipment and materials" (87 AD3d at 420). Thus, neither the property owner defendant, nor the general contractor defendant in *Flores* was involved with the Bronx facility.

The *Flores* Court, relying on *Adams v Pfizer, Inc.* (293 AD2d 291 [1st Dept 2002], *lv denied* 99 NY2d 511 [2003]), looked to factors such as physical proximity and common ownership and operation of the off-site premises in determining whether the plaintiff was working in a construction area within the meaning of Labor Law § 241 (6) (87 AD3d at 421). However, the facts in *Adams* are distinguishable. In *Adams*, the plaintiff was injured on his employer's premises while working on a mock-up design being constructed by his employer in connection with renovations to be completed at the defendant Pfizer's premises (*id.* at 292). The *Adams* case does not stand for the proposition that a construction area within the meaning of Labor Law § 241 (6) must be within a certain mileage of, or proximity to, the actual building site. Nor does it support the proposition that the property owner and/or construction manager must have ownership of, or operate the additional off-site facility, in order to bring it within the purview of the statute. Rather, *Adams* simply stands for the proposition that an individual who was injured while working on a project for his employer in connection with the renovation of a defendant's premises was not involved in "construction" within the intended meaning of the statute, and thus is not afforded the protections of Labor Law § 241 (6).

Here, however, and as distinguishable from *Flores*, there is a closer nexus between the leasing of the Bronx Yard and defendants 56 Leonard and Lend Lease. Indeed, Collavino, subcontracted by Lend Lease, which was hired by 56 Leonard, was responsible for furnishing "[a]ll temporary Project site facilities" and agreed "to place its Temporary Facilities in locations designated by Owner or Construction Manager." Additionally, the Temporary License for the Bronx Yard was secured solely by Collavino, and for the purpose of completing work to be "forwarded directly to a construction site in Manhattan."

---

2. The dissent contends that we are bound by *Flores*, and thus under the doctrine of stare decisis, we cannot depart from it. We disagree because we find that *Flores* is distinguishable from the case currently before us, as are the cases relied upon by the *Flores* Court.

The dissent contends that there is no need for this Court to interpret the Trade Contract, because it "governs only temporary *on-site* facilities that Collavino might need to perform its work" (emphasis added). However, the Temporary Facilities clause does not specifically limit its application to "on-site facilities." Rather, it references generally "Temporary Facilities," which will be in "locations designated by Owner or Construction Manager." To find that it applies only to "on-site facilities" requires us to read a term into the contract that is not there. Additionally, the dissent argues that there is nothing in the record to suggest that "56 Leonard and Lend Lease had any reason to dictate where Collavino . . . performed any necessary off-site work . . . ." However, this is merely speculation; whether the Temporary Facilities clause is limited to on-site facilities or is inclusive of off-site facilities is clearly a question of fact that cannot be determined on this prediscovery motion to dismiss.

Nor does the case law cited by the dissent for the proposition that plaintiff was "not working in a construction area within the meaning of Labor Law § 241 (6)" dictate dismissal of plaintiff's claim. In the first instance, all of the cases referenced were decided on summary judgment, after discovery was complete. In *Jock v Fien* (80 NY2d 965 [1992]), the plaintiff was injured when he fell "during his customary occupational work of fabricating a concrete septic tank" at the defendant's facility, "whose business included the manufacture of septic tanks" (*id.* at 966). The case did not involve any construction project or site; hence, the Court's decision that the plaintiff's activity did not fall within the protection of the statute. In *Pirog v 5433 Preston Ct., LLC* (78 AD3d 676 [2d Dept 2010]), the Court found that the plaintiff was not engaged in construction work and was not working in a construction area because he was injured on his employer's property, which was used to "store construction-related materials for use on various construction projects" (*id.* at 676). Similarly, in *Davis v Wind-Sun Constr., Inc.* (70 AD3d 1383 [4th Dept 2010]), the plaintiff was injured while working at his employer's facility, and thus, was not entitled to the protection afforded by the statute (*see also Maragliano v Port Auth. of N.Y. & N.J.*, 2012 NY Slip Op 30374[U], *4-5, [Sup Ct, Queens County 2012] [finding that the plaintiff was injured while working at his employer's facility, which was used as a storage area, and thus, was not protected under the statute], *affd* 119 AD3d 534 [2d Dept 2014]). Such is not the case here, where the Bronx Yard was leased by Collavino, a subcontractor hired by the defendant construction manager, and not by plaintiff's employer, and was to be used

only for work in connection with the Manhattan (56 Leonard Street) construction project.

Further, the dissent places an undue emphasis on *Martinez v City of New York* (93 NY2d 322 [1999]), where the Court of Appeals rejected the analysis "which focused on whether plaintiff's work was an 'integral and necessary part' of a larger project within the purview of section 240 (1)" (*id.* at 326). First, *Martinez* concerned only Labor Law § 240 (1); it did not address or discuss Labor Law § 241 (6). Second, *Martinez* involved different phases of work, specifically, preconstruction "inspection" or "investigatory" work in which the plaintiff was involved (*id.* at 325, 326). The Court of Appeals has since reiterated its holding in *Martinez* to be that the statute "afforded no protection to a plaintiff injured before any activity listed in the statute was under way" (*Panek v County of Albany*, 99 NY2d 452, 457 [2003]). To the extent the dissent focuses on the Court's statement that "statutory language must not be strained," the *Martinez* Court also stated that the Labor Law statute at issue was "to be construed as liberally as may be for the accomplishment of the purpose for which it was . . . framed" (93 NY2d at 326 [internal quotation marks omitted]). Indeed, the Court of Appeals has found that the purpose of Labor Law § 241 (6) is "to protect workers engaged in duties connected to the inherently hazardous work of construction, excavation or demolition." (*Nagel v D & R Realty Corp.*, 99 NY2d 98, 101 [2002]). To apply the dissent's reasoning would be a failure to accomplish the purpose for which Labor Law § 241 (6) was framed.

Morever, there is no set distance which would automatically include or exclude applicability of Labor Law § 241 (6). Although the dissent cites *Shields v General Elec. Co.* (3 AD3d 715 [3d Dept 2004]) and *Brogan v International Bus. Machs. Corp.* (157 AD2d 76 [3d Dept 1990]) in support of the proposition that fabrication work performed in close proximity to the building under construction falls under the ambit of Labor Law § 241 (6), neither Court there was focused on the question of proximity, but rather, the decisive factor was that the injury occurred on property owned by the entity constructing the building. Here, there is still a question of fact as to the property owner and construction manager's involvement with the offsite temporary facilities. Concur—Acosta, Feinman, Kapnick and Webber, JJ.

Sweeny, J.P., dissents in a memorandum as follows: I dissent. The motion court correctly decided the motions to dismiss.

Defendants 56 Leonard LLC (56 Leonard) and Lend Lease

(US) Construction LMB Inc. (Lend Lease), the only defendants that are parties to this appeal, were the property owner and construction manager, respectively, of a construction project located in Manhattan. Lend Lease subcontracted with defendant Collavino Structures, LLC (Collavino) as the superstructure concrete contractor. Collavino in turn subcontracted with plaintiff's employer, nonparty Navillus Tile, Inc. (Navillus), to "receive, bend and install all rebar required for said project."

Plaintiff alleges that he was injured when he tripped and fell on debris at an assembly yard leased by Collavino in Bronx County. At the time he was injured, plaintiff was performing steel fabrication work—namely, bending and cutting rebar—at the Bronx yard for his employer, Navillus. The rebar work was for the construction of a new building on property owned by 56 Leonard located in Manhattan, eight miles from the yard.

The pertinent provisions of the contract between Collavino and Lend Lease are set forth in the majority's writing and need not be repeated here. However, it is the majority's strained interpretation of this contract that brings 56 Leonard and Lend Lease into the ambit of Labor Law § 241 (6). Such an expansion of liability is not justified by the terms of the contract, the statutory scheme of that statute, or the facts of his case.

A fundamental principle of contract interpretation is that "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). "Such agreements should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases" (*Bailey v Fish & Neave*, 8 NY3d 523, 528 [2007]). Whether an agreement is ambiguous is "a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous" (*South Rd. Assoc., LLC v International Bus. Machs. Corp.*, 4 NY3d 272, 278 [2005]).

The agreement in this case between Lend Lease and Collavino does nothing to bring Lend Lease and/or 56 Leonard within the ambit of Labor Law § 241 (6).

To begin with, there is no need for this Court to interpret that contract. A plain reading of the pertinent provision, when read in a commonsense manner, governs only temporary on-site facilities that Collavino might need to perform its work. Both 56 Leonard and Lend Lease certainly would have an interest in designating where such temporary facilities are located on site for safety purposes and to coordinate the work with other trades during construction. Indeed, the list of

temporary site facilities contained in the contract can only apply to on-site facilities as there is nothing in this record to even suggest that 56 Leonard and Lend Lease had any reason to dictate where Collavino or any of its subcontractors performed any necessary off-site work, or what type of "temporary" facilities Collavino or its subcontractors deemed necessary to erect at such off-site locations. There is certainly no indication or suggestion that 56 Leonard and Lend Lease had supervision or control over any off-site facilities deemed necessary by Collavino or its subcontractors. Significantly, only Collavino signed the lease with the yard's owner and plaintiff does not dispute 56 Lenoard and Lend Lease's contention that the contract between Lend Lease and Collavino makes no reference to the Bronx yard. Thus, there is no material issue of fact that requires a trial.

Dismissal of the Labor Law § 241 (6) claim as against 56 Leonard and Lend Lease is additionally warranted since plaintiff's fabrication of steel at the off-site Bronx facility does not constitute construction work at the Manhattan construction site (*see Flores v ERC Holding LLC*, 87 AD3d 419, 420-421 [1st Dept 2011]).

The majority attempts to distinguish the holding in *Flores*. In reality, *Flores* is squarely on point with the instant case. The main construction sites in *Flores* and here were in Queens and New York Counties, 12 and 8 miles respectively from the Bronx assembly yards where the injuries occurred in each case. In both cases, neither the owners of the buildings under construction owned, leased or directed the subcontractors to use the particular locations where each plaintiff was injured. Although in *Flores*, the general contractor and subcontractor that employed that plaintiff were related entities, that relationship is absent here. This fact only enhances 56 Leonard's argument for dismissal, since here there is absolutely no connection between it and plaintiff's employer Navillus. Indeed, the contract in question was only between Collavino and Navillus. To hold, as the majority does in this case, that a contract between two subcontractors can be used to impute liability under Labor Law § 241 (6) for an injury occurring off-site from the main construction site is an unsupported extension of the protections of that statute.

In addition to *Flores*, it has repeatedly been held in this and other Judicial Departments that under these circumstances, an injured plaintiff is not engaged in construction work within the meaning of Labor Law § 240 (1) and is not working in a construction area within the meaning of Labor Law § 241 (6).

To hold otherwise runs afoul of the limitations of the protections afforded under those statutes (*see e.g. Jock v Fien*, 80 NY2d 965, 968 [1992]; *Adams v Pfizer, Inc.*, 293 AD2d 291, 292 [1st Dept 2002], *lv denied* 99 NY2d 511 [2003]; *Pirog v 5433 Preston Ct., LLC*, 78 AD3d 676, 677 [2d Dept 2010]; *Davis v Wind-Sun Constr., Inc.*, 70 AD3d 1383 [4th Dept 2010]; *Maragliano v Port Auth. of N.Y. & N.J.*, 2012 NY Slip Op 30374[U] [Sup Ct, Queens County 2012], *affd* 119 AD3d 534 [2d Dept 2014]). While these statutes are to be construed in such a way as to accomplish the purposes for which they were enacted, " 'the statutory language must not be strained in order to encompass what the Legislature did not intend to include' " (*Martinez v City of New York*, 93 NY2d 322, 326 [1999], quoting 252 AD2d 545, 546 [2d Dept 1998], quoting *Karaktin v Gordon Hillside Corp.*, 143 AD2d 637, 638 [2d Dept 1988]).

While it is true that *Martinez* only referenced Labor Law § 240 (1), the principle that judicially created inclusions not intended by the legislature in drafting the Labor Law statutes is impermissible still holds true.

The majority here simply disagrees with the reasoning in *Flores*. It is, however, the law of this Department. The absence of a consistent body of law on a particular issue would lead to conflicting opinions and confusion for the practicing bar and the community that expects consistency from this Court in order that it may guide its actions accordingly. "Continuity and predictability are important values for a [c]ourt. We should adhere to precedent unless it is clear that a prior decision has produced an unjust or unworkable rule" (*Eastern Consol. Props. v Adelaide Realty Corp.*, 95 NY2d 785, 787 [2000]). Indeed, "the doctrine of stare decisis should not be departed from except under compelling circumstances" (*Cenven, Inc. v Bethlehem Steel Corp.*, 41 NY2d 842, 843 [1977] [emphasis omitted]).

Here, there is no reason to depart from the precedent established in *Flores*, which, in my view, is indistinguishable from this case. Plaintiff has "not demonstrated the existence of compelling circumstances so as to warrant departure from the doctrine of stare decisis" (*Yenem Corp. v 281 Broadway Holdings*, 76 AD3d 225, 232 [1st Dept 2010], citing *Eastern Consol. Props.*, 95 NY2d 785, *revd* 18 NY3d 481 [2012]; *Cenven, Inc.*, 41 NY2d at 843).

Nor does it matter in this particular case that this is a CPLR 3211 motion to dismiss as opposed to a CPLR 3212 motion for summary judgment. There is no issue of fact that 56 Leonard and Lend Lease had no interest in, or authority to direct, work or activities at the Bronx location. As a matter of law, a cause of action simply does not exist against them in this case.

The majority's contention regarding the lack of space to build in New York City is a chimerical attempt to circumvent the prohibition against extending liability under Labor Law § 240 (6) as set forth above. While it is true that physical proximity to the main construction site is a factor to be considered in determining liability (*see e.g. Shields v General Elec. Co.*, 3 AD3d 715, 717 [3d Dept 2004] [fabrication building on owner's property 100 yards from building under construction]; *Brogan v International Bus. Machs. Corp.*, 157 AD2d 76, 79 [3d Dept 1990] [transport from one end of a building to the other]), it is but one of several factors that must be considered in determining whether the Labor Law applies, as noted by the precedents cited above. Indeed, as the majority notes, ownership of the property where the injury occurred is another factor that must be considered. However, to argue in essence that Labor Law § 241 (6) must be applicable to off-site fabrication in New York City because there is inadequate space to do so onsite does not comport with the law as it presently exists.

In short, the majority holding today extends liability beyond that envisioned by the Legislature in enacting Labor Law § 241 (6).