Karwowski v 1407 Broadway Real Estate, LLC (2018 NY Slip Op 01422)





Karwowski v 1407 Broadway Real Estate, LLC


2018 NY Slip Op 01422


Decided on March 1, 2018


Appellate Division, First Department


Kapnick, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 1, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, P.J.
Sallie Manzanet-Daniels
Judith J. Gische
Barbara R. Kapnick
Marcy L. Kahn,JJ.


595174/14 153277/12 4855 

[*1]Jan Karwowski, Plaintiff-Appellant-Respondent,
v
1407 Broadway Real Estate, LLC, Defendant-Respondent-Appellant, The Cayre Group, Ltd., Defendant-Respondent. 
[And a Third-Party Action]



Plaintiff appeals from an order of the Supreme Court, New York County (Ellen M. Coin, J.), entered August 9, 2016, which, insofar as appealed from as limited by the briefs, dismissed his Labor Law § 241(6) claims against defendants, and denied, as moot, defendant 1407 Broadway Real Estate LLC's cross motion for summary judgment on its contractual indemnification claim against defendant the Cayre Group, Ltd.




Gregory J. Cannata & Associates, LLP, New York (Gregory J. Cannata of counsel), for appellant-respondent.
Baxter Smith & Shapiro, P.C., Hicksville (Sim R. Shapiro, Robert C. Baxter and Jennifer Warycha of counsel), for respondent-appellant.
Weiser & McCarthy, New York (David Weiser of counsel), for respondent.



KAPNICK, J.


Plaintiff, a former employee of third-party defendant XCEL Interior Contracting, Inc. (XCEL), injured his left thumb on an unguarded table saw when he was cutting a piece of plywood to be used in the renovation of defendant the Cayre Group, Ltd.'s (Cayre) executive bathroom on the 41st floor of the building located at 1407 Broadway in Manhattan. Cayre leased its showroom space on the 41st and 42nd floors of the office building from defendant 1407 Broadway Real Estate, LLC (1407 Broadway), which held the net operating lease on the whole building. Cayre entered into a lease extension with 1407 Broadway in March 2011, which included a provision that 1407 Broadway would reimburse Cayre for tenant improvements in the space, and also included a schedule of approved contractors that were permitted to work in the building, which list included XCEL. Cayre hired XCEL to do the renovations to its space pursuant to an oral agreement. The lease extension also provided that "[a]ll work done by the contractor [XCEL] must be coordinated with the Building Manager," and that the contractor "must comply with all reasonable direction given by the Building Manager with respect to the scheduling and performance of the work."
The unguarded table saw was located on the 16th floor of the same office building, in a space where employees of XCEL kept their tools and materials for renovation projects they were performing in the building. XCEL used only a portion of the 16th floor to store its materials and tools, including the table saw, but it did not have any personnel, or office furniture in the space. According to the record, XCEL did not have a lease with either Cayre or 1407 Broadway for the space, and it did not pay rent to anyone for the space [FN1]. XCEL's permanent office and workshop were located in Long Island City, Queens. XCEL employees only utilized the 16th floor space when working on renovation projects in that building, where XCEL was an approved contractor. Thus it was not, as Cayre argues throughout its brief, "merely fortuitous" that both XCEL and Cayre were located in the same building on the date of plaintiff's accident.
The motion court granted Cayre's motion for summary judgment, finding that the 16th floor work space "was a permanent workshop controlled by XCEL, not a temporary staging area ancillary to the Project and controlled by Cayre." Although 1407 Broadway did not seek summary judgment as to plaintiff's claims, the motion court nonetheless searched the record and found that because Labor Law § 241(6) did not apply to plaintiff's accident, plaintiff's Labor Law claims must be dismissed as against 1407 Broadway as well. The motion court further determined that its grant of summary judgment and dismissal of all causes of action against 1407 Broadway rendered its indemnification cross claims moot.[FN2]
The purpose of Labor Law § 241(6) is "to protect workers engaged in duties connected to the inherently hazardous work of construction, excavation or demolition . . ." (Nagel v D & R Realty Corp., 99 NY2d 98, 101 [2002]). Labor Law § 241(6) provides, in relevant part, that "[a]ll contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements: . . . 6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."
Labor Law § 241(6) imposes a nondelegable duty on property owners to "provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor" (St. Louis v Town of N. Elba, 16 NY3d 411, 413 [2011], quoting Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501-502 [1993]; see also Allen v Cloutier Constr. Corp., 44 NY2d 290, 300 [1978]). "A lessee of property under construction is deemed to be an owner' for purposes of liability under article 10 of New York's Labor Law" (Kane v Coundorous, 293 AD2d 309, 311 [1st Dept 2002]). Indeed, the term " owners' within the meaning of section 241 of the Labor Law is not limited to the titleholder . . . [It] encompass[es] a person who has an interest in the property and who fulfill[s] the role of owner by contracting to have work performed for his benefit" (id.), as was the situation here with Cayre having hired XCEL.
Defendants contend that the 16th floor space was not a temporary work space or staging area created for the renovation of Cayre's offices and executive bathroom, but rather, was XCEL's permanent workshop and, for the past 10 years, the location where plaintiff reported to work each day and was given his assignment for that day. Thus, defendants argue that plaintiff's accident does not fall within the scope of Labor Law § 241(6) because the 16th floor workshop does not constitute an "area[] in which construction, excavation or demolition work is being performed" as required by the statute (Labor Law § 241[6]). Cayre further argues that Labor Law § 241(6) does not apply because at the time of his accident, plaintiff was involved in the fabrication and transportation of a component part to be used in the renovation project which, according to Cayre, was conduct that has been found to fall outside the scope of the statute.
We disagree and reverse the motion court's order. We find that there are disputed issues of fact concerning whether the 16th floor space qualifies as a construction area. "The Flores Court, relying on Adams v Pfizer, Inc. (293 AD2d 291 [1st Dept 2002], lv denied 99 NY2d 511 [2003]), looked to such factors as physical proximity and common ownership and operation of the off-site premises in determining whether the plaintiff was working in a construction area within the meaning of Labor Law § 241(6)" (Gerrish v 56 Leonard LLC, 147 AD3d 511, 513 [1st Dept 2017]). Indeed, "[g]enerally, the scope of a work site must be reviewed as a flexible concept, defined not only by the place but by the circumstances of the work to be done. Thus, Labor Law § 241(6) extends to areas where materials or equipment are being readied for use, as opposed to areas where they are merely stored for future use" (Gonnerman v Huddleston, 78 AD3d 993, 995 [2d Dept 2010] [internal citations omitted]). Here, although defendants contend that the 16th floor space is XCEL's permanent workshop, in fact, the 16th floor work space where the accident occurred belonged to 1407 Broadway, and the 41st floor location of the executive bathroom being renovated was owned by 1407 Broadway, and leased to Cayre.
Cases in which it has been determined that the accident did not occur in a location that qualifies for Labor Law § 241(6) protection are distinguishable (see Flores v ERC Holding LLC,87 AD3d 419 [1st Dept 2011] [finding that the plaintiff was injured while working at a Bronx facility, which was leased by his employer for storage of equipment and materials to be used in a construction project in Queens on property owned by the defendant]; Adams v Pfizer, Inc., 293 AD2d 291 [finding that the plaintiff was injured while working on a project for his employer at his employer's facility, and thus, was not engaged in "construction" within the intended meaning of the statute]; Davis v Wind-Sun Constr., Inc., 70 AD3d 1383 [4th Dept 2010] [finding that the plaintiff was injured while working at his employer's facility]). Here, defendants cannot dispute that had the table saw been set up on the 41st floor and the accident occurred there, the protections of Labor Law § 241(6) would apply. Merely because it was more convenient to leave the table saw on the 16th floor and cut the wood there, and then bring the wood up to the 41st floor by elevator, should not result in the automatic loss of the protections afforded by the statute.
We further reject Cayre's argument that, under Flores, plaintiff's accident does not come within the ambit of Labor Law § 241(6) because he was engaged in the fabrication and transportation of materials to be used in connection with construction. As stated by the Court of Appeals, Labor Law § 241(6) covers industrial accidents that occur in the context of construction (Nagel v D & R Realty Corp., 99 NY2d 98). Indeed, Shields v General Elec. Co. (3 AD3d 715 [3d Dept 2004]) is instructive. There, the Court noted that "work that is an integral part of the construction contract' and is necessitated by and incidental to the construction . . . and involve[s] materials being readied for use in connection therewith' is construction work" (id. at 717, quoting Brogan v International Bus. Machs. Corp., 157 AD2d 76, 79 [3d Dept 1990] ["(T)he lack of proximity between the place of accident and the precise location of construction is not dispositive against Labor Law liability for injuries to workers handling construction materials and equipment"]).
Finally, we reverse the motion court's denial of 1407 Broadway's cross motion for summary judgment on its cross claim for contractual indemnification. "A party is entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances'" (Drzewinski v Atlantic Scaffold & Ladder Co., 70 NY2d 774, 777 [1987], quoting Margolin v New York Life Ins. Co., 32 NY2d 149, 153 [1973]). The indemnity provision at issue here states, in relevant part, that the "Tenant shall indemnify, defend and save harmless Landlord . . . from and against (a) all claims of whatever nature against Landlord arising from any act, omission or negligence of Tenant, its subtenants, contractors, licensees, agents, servants, invitees, employees or visitors . . . ." This is a clear and unambiguous indemnity provision that does not, despite Cayre's argument to the contrary, require a finding of "active negligence" or fault on the part of Cayre. Rather, all that is necessary to trigger the provision is a claim arising from any act or omission of Cayre or Cayre's contractor, here, XCEL (see Santos v BRE/Swiss, LLC, 9 AD3d 303 [1st Dept 2004]; Tobio v Boston Props., Inc., 54 AD3d 1022, 1024 [2d Dept 2008] [finding that "(t)he indemnification clause does not, by its terms, limit indemnification only to claims arising out of the negligence of (the indemnitor) in the performance of the work"]). It is clear from the contractual language at issue here that the landlord, 1407 Broadway, intended to be indemnified by the tenant, Cayre, for any work being done by Cayre or its contractors in the building.
Accordingly, the order of the Supreme Court, New York County (Ellen M. Coin, J.), entered August 9, 2016, which, insofar as appealed from as limited by the briefs, dismissed plaintiff's Labor Law § 241(6) claims against defendants, and denied, as moot, 1407 Broadway's cross motion for summary judgment on its contractual indemnification claim against Cayre, should be reversed, on the law, without costs, plaintiff's Labor Law § 241(6) claim reinstated as against both defendants, and 1407 Broadway's cross motion for contractual indemnification granted.
All concur.
Order, Supreme Court, New York County (Ellen M. Coin, J.), entered August 9, 2016, reversed, [*2]on the law, without costs, plaintiff's Labor Law § 241(6) claim reinstated as against both defendants, and 1407 Broadway's cross motion for contractual indemnification granted.
Opinion by Kapnick, J. All concur.
Acosta, P.J., Manzanet-Daniels, Gische, Kapnick, Kahn, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 1, 2018
CLERK



Footnotes

Footnote 1: Apparently, the courtesy of providing rent-free space in the building was extended to other approved contractors by 1407 Broadway as well.

Footnote 2: Plaintiff is not appealing the dismissal of his common-law negligence and Labor Law § 200 claims.