■ EASTERN CONSOLIDATED PROPERTIES, INC., Respondent, v ADELAIDE REALTY CORP. et al., Appellants. [691 NYS2d 45] —Order, Supreme Court, New York County (Beatrice Shainswit, J.), entered March 2, 1998, which, *inter alia*, denied defendants' motion to dismiss the complaint, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint.

Defendant, in seeking to sell 25 West 45th Street, New York County, entered into an oral agreement with plaintiff real estate broker which provided for the payment of a commission upon procuring a purchaser ready, willing and able to purchase upon the terms and conditions set by defendants. After procuring such a purchaser, plaintiff prepared, and both sides executed, a letter agreement providing that the commission "shall be due and payable in full by certified or bank check at closing of title if and only if title actually passes to the purchaser, unless failure to close title is due to [defendants'] willful default." Thereafter, defendants never entered into a contract of sale with the prospective purchaser. Under the holding of *Graff v Billet* (64 NY2d 899), it is apparent that no commission is owing in these circumstances. Accordingly, defendants' motion should have been granted and the action dismissed. Concur— Nardelli, J. P., Williams, Tom and Friedman, JJ.

Rubin, J., concurs in a memorandum as follows: Under the doctrine of stare decisis, this Court is bound by the holding in *Graff v Billet* (64 NY2d 899, *affg* 101 AD2d 355) to dismiss the complaint in this matter. However, while I am constrained to concur in the result, I consider the reasoning of the dissenting opinions in *Graff* to better reflect established principles of contract law. I conclude that further consideration should be given to the question of what constitutes a default under a brokerage agreement.

In or about April 1995, Theodore Samourkas, acting on behalf of defendants Adelaide Realty Corp. and Harrow Realty Corp., entered into an oral agreement with plaintiff Eastern Consolidated Properties, Inc., a real estate broker, pertaining to the sale of premises known as 25 West 45th Street in the City and County of New York. The complaint alleges that, pursuant to the oral agreement, defendants would pay a commission to plaintiff "upon Eastern procuring a purchaser who was ready, willing and able to purchase the Premises upon the terms and conditions set by defendants," in the amount of 2% if plaintiff was the sole broker and 3% if a co-broker was involved.

Plaintiff actively marketed the premises for 21 months and, in November 1997, introduced a potential purchaser, Steven Blumenthal, to defendants' agent. The brokerage agreement was later memorialized in a letter dated February 12, 1997, drafted by plaintiff's Chairman and Chief Executive Officer, Peter Hauspurg, and addressed to Theodore Samourkas. The letter agreement states, in material part:

"This letter will set forth our Commission Agreement with

regard to the proposed sale of 25 West 45th Street to Steven Blumenthal, his partners or nominees, to whom we have introduced you as brokers.

"By execution of this letter, you agree to pay us the sum of $425,000 as the brokerage commission in connection with this sale. Said commission shall be due and payable in full by certified or bank check at closing of title if and only if title actually passes to the purchaser, unless failure to close title is due to your willful default."

Defendants brought a motion to dismiss the complaint for failure to state a cause of action (CPLR 3211 [a] [7]) on the ground that the February 12, 1997 letter supersedes the oral agreement. Because Mr. Blumenthal never took title to the property, they maintain, the condition set forth in the written agreement that the commission is due "if and only if title actually passes to the purchaser" never arose, and they have no obligation to the broker.

Both in opposition to defendants' motion to dismiss and on appeal, plaintiffs assert that the letter is merely an "additional agreement", providing only that the "brokerage commission would not be paid until the closing of title and that Defendants would be relieved of their obligation to pay the commission in the event that title were not to close as a result of some event other than Defendants' willful default (for example if the purchaser failed to close for reasons not attributable to Defendants)." Supreme Court denied the motion to dismiss the complaint. Citing *Feinberg Bros. Agency v Berted Realty Co.* (70 NY2d 828, 831), the court stated, "Plaintiff cannot be charged, as a matter of law, with intending to modify the agreement with its February 12, 1997 letter".

On appeal, defendants contend, as they did below, that *Feinberg* (*supra*) is inapposite and that this case is controlled by the Court of Appeals' decision in *Graff v Billet* (*supra*), which dictates the dismissal of plaintiff's claim. In *Graff*, a broker located a prospective purchaser but, before any contract of sale was executed, the seller accepted a better offer and conveyed title to another buyer. As in the matter before us, *Graff* involves a written brokerage agreement, drafted by the broker, which provides that no fee is payable " 'except for willful default on the part of the seller' " (*Graff v Billet*, 101 AD2d, *supra,* at 355). While acknowledging that this phrase might be susceptible to a broader construction, the majority decisions in the case confine its application to a breach of the underlying contract of sale, applying the maxim of *contra proferentum* to preclude consideration of the construction urged by the broker

(*Graff v Billet*, 64 NY2d, *supra,* at 902, citing *151 W. Assocs. v Printsiples Fabric Corp.*, 61 NY2d 732, 734; *United States v Seckinger*, 397 US 203, 216). *Graff* holds that there can be. no default of the brokerage agreement unless the seller is bound by a written contract of sale to convey the property to the purchaser located by the broker. Therefore, the seller remains free to convey the property to another purchaser at any time before a contract of sale is signed, without incurring any liability for a broker's commission.

*Graff* was decided over dissenting opinions. Both at the Appellate Division and the Court of Appeals, the dissenters found the result to be offensive to the principle that a claim for breach of contract "cannot be defeated by a party who relies on a condition precedent which his own nonperformance has prevented from occurring" (*Graff v Billet*, 101 AD2d, *supra,* at 358 [Lazer, J., dissenting]). "To construe the clause in question to refer only to default in closing title is to ignore case law holding the broker entitled to his commission upon producing a buyer ready, willing and able even though no contract of sale between [seller] and purchaser is ever signed" (*Graff v Billet*, 64 NY2d, *supra,* at 903 [Kaye, J., dissenting]). The dissenting opinions in both Courts further point out that the purpose of brokerage contracts of this sort is to "shift the risk of the buyer's default or the seller's title deficiencies to the broker, but the broker is not ordinarily deemed to have accepted the risk of the seller's own willful default" (*Graff v Billet*, 101 AD2d, *supra,* at 359). The promise of the broker's customer to pay the commission " 'does not call for performance unless there has been a fulfillment of the further condition, either that such customer shall make a contract enforceable against him, or that the conveyance shall be consummated, except that if the principal is responsible for the nonperformance of such condition, it is dispensed with and the promise to pay the commission becomes unconditional' " (*Graff v Billet*, 64 NY2d, *supra,* at 903, quoting Restatement [Second] of Agency § 445, comment *e*).

It is generally sound to assess the performance of the parties to a real estate contract from the perspective of the closing of title (*1776 Assocs. Corp. v Broadway W. 57th St. Assocs.*, 181 AD2d 601, 603-604 [Rubin, J., dissenting, citing *Lawrence v Miller*, 86 NY 131, 137], *appeal dismissed* 80 NY2d 824; *see also, Gargano v Rubin*, 200 AD2d 554). However, the real estate broker is not a party to the underlying transaction, and it is well settled that a broker's entitlement to compensation is not dependent on consummation of the sale.

As an initial consideration there is no merit to plaintiff's contention that the writing is merely an "additional agreement". The contract recites that it constitutes "our Commission Agreement" and contains no ambiguity (*cf., Feinberg Bros. Agency v Berted Realty Co., supra* [ambiguous whether closing meant to be condition of payment or merely time for payment]). Where the intent of the parties can be ascertained from the four corners of their written agreement, there is no need to resort to extrinsic evidence (*Federal Deposit Ins. Corp. v Herald Sq. Fabrics Corp.*, 81 AD2d 168, 180, *appeal dismissed* 55 NY2d 602).

The question raised by this case is the meaning to be ascribed to the term "willful default" on the seller's part (*Graff v Billet*, 64 NY2d, *supra*, at 902). The majority decisions in *Graff* reason that the "default" contemplated by this language is irrefutably the seller's default in performance of the underlying contract of sale. However, why the "default" contemplated in the brokerage agreement should necessarily be referable to the nonperformance of a collateral contract is simply not explained.

In the matter under review, the broker's commission is payable "unless failure to close title is due to [the seller's] willful default." Under *Graff*, not only is closing a condition to payment of the commission (by express agreement), a signed contract of sale is a necessary condition to default under the contract of sale (by implication). Whether two contracts should be read together or separately depends on the intent of the parties, and where two agreements involve different parties and are executed at different times, "the conclusion of separateness becomes all but inescapable" (*Rudman v Cowles Communications*, 30 NY2d 1, 13). For obvious reasons, a brokerage agreement precedes any contract of sale and obligates the seller to compensate the broker; the anticipated contract of sale, by contrast, obligates the seller to convey title to the purchaser. Therefore, under the rule enunciated in *Rudman (supra)*, the contracts should be deemed separate. From this perspective, the contemplated "default" is that of the contract in chief between broker and seller. Thus, the preferable construction is that the broker's commission is due when the failure to close is occasioned by the seller's willful breach of the brokerage agreement, as suggested by the dissenting opinion of Judge Kaye (*Graff v Billet*, 64 NY2d, *supra,* at 903).

The rationale embraced by the majority in *Graff* also fails to enforce the obligation of parties to a contract to act in good faith. As this Court noted in *Curtis Props. Corp. v Greif Cos.* (212 AD2d 259, 264-265): " 'It is well settled that "conditions in

contracts for compensation of brokers have been enforced in accordance with the letter of the promise to pay" (*Mascioni v I.B. Miller, Inc.*, 261 NY 1, 5). However, it is equally settled that "a party may not frustrate the performance of an agreement by bringing about the failure of a condition precedent" (*Creighton v Milbauer*, 191 AD2d 162, 165, citing *Lindenbaum v Royco Prop. Corp.*, 165 AD2d 254, 260).' "

For example, in *Rachmani Corp. v 9 E. 96th St. Apt. Corp.* (211 AD2d 262), this Court was confronted with the claim that no payment was due to a broker because transfer of title to a particular party was made a condition precedent to the obligation to pay the broker's commission. We stated (at 270): "where the occurrence of the condition is largely or, as here, exclusively within the control of one of the parties, it is said that 'the express language of the condition gives rise to the implied language of promise' (*Stendig, Inc. v Thom Rock Realty Co.*, 163 AD2d 46, 48; Calamari and Perillo, Contracts § 144, at 233-234; 5 Williston, Contracts § 665 [3d ed]). Having conditioned the payment of plaintiff's brokerage commission on the transfer of the premises to Owners, the sponsor 'implicitly promised to use his good-faith best efforts to bring about this result' (*supra*, at 48; *Wood v Duff-Gordon*, 222 NY 88; *Scientific Mgt. Inst. v Mirrer*, 27 AD2d 845; *Kelsey v Distler*, 141 App Div 78). The condition does not necessarily form the basis for an independent promise supporting recovery of damages for its breach (*Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106, 113; *see also, Lindenbaum v Royco Prop. Corp.*, *supra*, at 259-260). However, the failure of the condition may not be set up as a defense to the underlying obligation under the contract where the party charged with the duty to fulfill the condition has failed to make a good-faith effort to bring it about. *A fortiori*, failure of the condition cannot be utilized·as a defense where, as here, the party resisting the contractual obligation has affirmatively acted to obviate its fulfillment (*Gulf Oil Corp. v American La. Pipe Line Co.*, 282 F2d 401, 404 [6th Cir])." Where a party to a contract frustrates the performance of the agreement by causing the failure of a condition precedent, the other party may recover on a theory of implied contract (*Knobel v Manuche*, 146 AD2d 528, 530, citing *Carvatt v Lippner*, 82 AD2d 818). The rule is well settled that "active conduct of the conditional promisor, preventing or hindering the fulfillment of the condition, eliminates it and makes the promise absolute" (*Amies v Wesnofske*, 255 NY 156, 163).

Construing the facts in a light most favorable to plaintiff for the sake of a motion to dismiss directed at the sufficiency of

the pleadings (*Sanders v Winship*, 57 NY2d 391, 394; *Arrington v New York Times Co.*, 55 NY2d 433, 442, *cert denied* 459 US 1146; *Dulberg v Mock*, 1 NY2d 54, 56), defendants' bad faith and their deliberate frustration of the brokerage agreement are sufficiently stated. The complaint, together with the communications between the parties with respect to the proposed sale, states a valid cause of action for breach of the brokerage agreement arising out of defendants' refusal to sign a contract with a purchaser procured by plaintiff on terms identical to those which they related to their broker.

Accordingly, the order should be reversed, the motion granted, and the complaint dismissed.