Georgia Malone & Co., Inc. v E&M Assoc. (2018 NY Slip Op 05525)





Georgia Malone & Co., Inc. v E&M Assoc.


2018 NY Slip Op 05525


Decided on July 26, 2018


Appellate Division, First Department


Tom, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 26, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels, J.P.
Peter Tom
Richard T. Andrias
Troy K. Webber,JJ.


150660/14 6794 

[*1]Georgia Malone & Company, Inc., Plaintiff-Appellant, 
v
E & M Associates, et al., Defendants-Respondents.



Plaintiff appeals from the order of the Supreme Court,
New York County (Kelly O'Neill Levy, J.), entered June 27, 2017, which denied plaintiff's motion for partial summary judgment on the causes of action for breach of contract and attorneys' fees, and granted defendants' motion for summary judgment dismissing the causes of action for breach of contract, breach of implied contract, quantum meruit, unjust enrichment, and attorneys' fees.




Davidoff Hutcher & Citron LLP, New York (Frank L. Perrone, Jr. of counsel), and Claude Castro & Associates PLLC, New York (Claude Castro of counsel), for appellant.
Sadis & Goldberg, LLP, New York (Douglas R. Hirsch and Jennifer Rossan of counsel), for respondents.



TOM, J.


In this action for recovery of a brokerage commission, plaintiff broker argues that it is entitled to the agreed-upon commission because defendants E & M Associates, Michael Langer, Irving Langer, Leibel Lederman, Aryeh Ginzberg, Scott Katz, and the LLC defendants were bound by the commission agreement and breached the agreement when they purchased the properties (using newly formed entities) and failed to pay the commission. We find that the language in the agreement is ambiguous, and thus that there is a triable issue of fact as to whether the parties intended to bind all the defendants to the agreement. Accordingly, defendants are not entitled to summary judgment dismissing the causes of action for breach of contract and [*2]attorneys' fees as against any of them.
The properties at issue consist of 85 multifamily homes containing 90 buildings and 1.4 million square feet in upper Manhattan (the properties), which were ultimately purchased by limited liability companies formed for that purpose.
Plaintiff is a real estate brokerage firm, run by its president, Georgia Malone, a broker and attorney. Defendant E & M Associates LLC (E & M) is a real estate acquisition and management firm whose members consist of defendant Irving Langer and his wife Miriam Langer. Irving Langer, along with defendants Aryeh Ginzberg and Leibel Lederman, are partners in the firm. Defendant Michael Langer, Irving's son, is an E & M employee. Defendant Scott Katz is employed by nonparty Galil Management LLC, a successor to E & M, but was previously listed on E & M's website as E & M's CFO.
Separately, Ginzberg and Lederman are in the real estate syndication business and have bought and sold real estate by themselves and through entities they wholly own, and have negotiated and concluded deals with other individuals and entities.
According to Ginzberg and Lederman, in November 2011, they met with nonparty Baruch Singer, owner of the properties, to discuss the purchase of the properties, but they could not agree on a value for the properties, and the discussions ended.
In fact, plaintiff had performed substantial due diligence and review of the properties in connection with an earlier "Unwind Transaction" in which Singer negotiated to modify his lender's right to purchase. This included a review of all rent rolls, condition of apartments, status of rent regulation of each apartment, air rights, J-51 issues, potential upside of the rent rolls, and numerous other analyses of the properties. Notably, the work plaintiff performed was confidential and for use only by the owner for the Unwind Transaction, and for the potential sale of the properties.
In the summer of 2012, plaintiff received the listing of the properties from Singer. In August 2012, nonparty Oren Richland, a principal of a real estate investment firm, contacted Malone and explained that he was working with investors from E & M who were interested in purchasing a multifamily portfolio. Malone advised that she was involved with the properties, and that she had prepared and was in possession of substantial confidential documentation about the properties. She said that she could arrange for an inspection of the properties, if E & M, as buyer, would first sign a "Confidentiality/Noncircumvent/Commission Agreement" (the agreement) confirming that all marketing and valuation analyses would be kept confidential and that the buyer would be obligated to pay a brokerage fee upon the purchase of the properties.
On August 29, 2012, Richland emailed Malone to ask her to send Michael Langer a copy of the agreement; the email copied Langer and provided Langer's contact details at E & M. Langer was forwarded the agreement on August 30, 2012. Within two hours, he forwarded the email, with confidential attachments, to Leibel Lederman. On August 30, 2012, the agreement was executed.
The agreement provides that it is made and agreed between plaintiff as broker and Michael Langer of E & M as "Buyer." The agreement was signed by Malone on behalf of plaintiff and by Langer on behalf of "E & M Associates," and notably contains a footnote providing that [s]ignatories each have apparent and actual authority to bind all employees, officers, successors, assigns and agents of all their related entities and affiliates to this letter agreement."
The agreement's preamble provides that plaintiff has certain information in its possession regarding the properties that will be disclosed to the buyer upon execution of the agreement, and that the buyer is considering purchasing the properties. The preamble stresses that the buyer will be permitted to review certain confidential information and that the buyer and its representatives are required to treat such information as confidential and must not reveal or disclose the information. "Representatives" is defined to mean "the Buyer's directors, officers, employees, [*3]managers, members, partners, affiliates, potential joint venturers, representatives and advisors, including, without limitation, attorneys, accountants, but excluding all brokers, agents, and consultants."
The agreement provides that plaintiff's "Marketing and Valuation Analyses" for the properties is to be kept confidential, and can be viewed only by the parties bound to the agreement and by the parties' representatives "who agree
in writing to be bound by the terms" of the agreement. The agreement further provides that the buyer agrees to take strict precautions to safeguard and protect the confidentiality of the Marketing and Valuation Analyses provided thereunder. Under the agreement, plaintiff would exclusively handle all communication with the seller of the properties until the buyer had "entered into a fully accepted and executed letter of intent to acquire the [Properties]."
Pursuant to the agreement, the buyer acknowledged that it was introduced to the seller and the properties and agreed to pay the broker a commission upon contract closing. The Brokerage Agreement clause also provided that if the buyer were found to have breached the clause or any other provision, it would reimburse plaintiff for damages and expenses, including attorneys' fees.
In addition, the agreement provided that the confidentiality restrictions would remain in effect for one year and that all other provisions, including the payment of commission, would last for five years after execution of the agreement.
On September 12, 2012, Malone conducted a tour of the Properties with Irving Langer and Michael Langer. According to Malone, in addition to sending Michael Langer the due diligence materials beforehand, she personally handed the due diligence material to the Langers immediately before the inspection, and reminded the Langers that plaintiff would be entitled to a commission if E & M "or any of its affiliates" purchased the properties. Malone further stated that, based on a market analysis that took several months and hundreds of hours of research, she advised the Langers that the purchase price for the properties should be approximately $200,000 per unit.
Malone claimed that she informed the Langers that the properties were subject to a 10-year option (the Unwind Transaction), starting November 11, 2006, held by one of the seller's lenders, which would allow the lender to purchase the properties at the 2006 market price. Malone further claimed that it was through her extensive work in analyzing and reviewing the properties that the Unwind Transaction was completed so that the sale of the properties could take place.
On September 13 and October 18, 2012, Richland followed up with Michael Langer, by email, stating: "Thanks again for coming out on the tour and joining the meeting with Elie. When you have a chance, please take a look at the updated model and we can discuss." Richland followed up with Michael Langer again on October 18, 2012, stating: "I am still waiting to hear back regarding both deals, Singer is doing his thing and the bank is still working on the numbers." Langer claimed that after September 12, 2012, he had no further contact with Malone, and that neither he nor E & M purchased the properties.
Meanwhile, plaintiff was marketing the properties to other entities. Specifically, on June 18, 2013, plaintiff marketed the properties to FBE Limited LLC (FBE), a privately held real estate and capital management company owned and managed by the Fruchthandler family. Malone claimed that she met with Mr. Fruchthandler and his team, arranged for a tour of the properties, provided updated due diligence materials, and provided analyses of potential condominium conversion of certain properties and air rights for possible floor additions.
In July 2013, Ginzberg was again contacted by Singer, the owner of the properties. Ginzberg claimed that Singer was anxious to sell the properties and that the two met and Ginzberg made an offer. Singer advised Ginzberg that he had already been in negotiations with [*4]FBE and that he was going to advise FBE that if it wanted to move ahead on the deal immediately, he would make the deal with it. Otherwise, he would make the deal for the properties with Ginzberg.
FBE agreed to complete the deal immediately, and on July 18, 2013, entered into a Purchase and Sale Agreement (PSA) with Singer for the properties pursuant to which it agreed to purchase the properties for more than $300 million dollars. However, FBE had difficulty raising sufficient funds for the deal. Ginzberg let Singer know that he was still interested if the deal fell through.
Ginzberg claimed that, in late September or early October 2013, at Singer's suggestion, he contacted FBE and asked if "we" could help close the deal by purchasing half the properties, but the parties were unable to agree on terms. Then, in October 2013, Ginzberg ran into Singer at a wedding and told him that he thought the FBE deal would collapse, and as a result, Singer asked him if he was still interested. Ginzberg brought Lederman into discussions with Singer and the Fruchthandlers, and the parties commenced negotiations for the properties.
On October 27, 2013, an agreement was reached whereby FBE agreed to assign the PSA to Manhattanville Holdings LLC, an entity formed by FBE when it thought it would be able to close the transaction. By agreement dated November 12, 2013, the PSA was assigned to Manhattanville Holdings, and on November 14, 2013, Manhattanville Holdings closed the deal. Lederman signed on behalf of Manhattanville Holdings; Lederman, Ginzberg, and Irving Langer all signed in connection with section 1(c) (indemnification of assignor), and section 5 (assignor and assignee represent that they have not dealt with any broker in this transaction other than Meridian Capital, LLC, and that the assignee and the "Principals," together with the assignor and Fruchthandler, agreed to indemnify each other for claims arising out of any representations and warranties set forth in section 5). The term "Principals" was defined in the agreement to mean Lederman, Ginzberg, and Irving Langer.
According to Ginzberg, Lederman, and Irving Langer, the managing member of Manhattanville Holdings was LIA MM LLC, and its members were Zaidys Manhattanville LLC, AZG II Manhattanville LLC, and LL Manhattanville LLC. The members of LIA MM LIC were Lederman, Ginzberg, and Irving Langer. In addition, Irving Langer was the managing member of Zaidys Manhattanville LLC, Ginzberg was the managing member of AZG II Manhattanville LLC, and Lederman was the managing member of LL Manhattanville LLC. The individually named defendants also averred that neither Michael Langer nor E & M were members of Manhattanville Holdings and that neither owned an equity interest in the properties.
Significantly, Lederman, Ginzberg, and Irving Langer were principals in the transaction and principals in the successor/ affiliate entity that entered into the assignment of contract, and created the 52 additional related successor and/or affiliated entities, also defendants in this action, that purchased and took title to the properties. A chart attached to the PSA confirms that Manhattanville Holdings is the owner of 75% of the equity in all of the properties and that AZG II Manhattanville is to be the ultimate owner of 25% of the equity in all of the properties. Plaintiff contended that Lederman, Ginzberg, and Irving Langer control all of the purchasing entities, in addition to the fact that they are partners in E & M. Plaintiff also pointed to a second list of limited liability companies, which are described on the above chart as the list of property owner entities and are ultimately owned by Manhattanville Holdings. Further, each of the defendant limited liability companies admitted, in response to plaintiff's notice to admit, that they purchased the properties.
Plaintiff commenced this action, asserting that it performed its services as set forth in the agreement, that on or about November 14, 2013, defendants closed on the purchase of the properties, and that defendants failed and refused to pay the agreed-upon commission of $3.5 million. Plaintiff also alleged that pursuant to the agreement defendants agreed to reimburse it [*5]for legal fees incurred, with interest.
The complaint asserts six causes of action: (1) breach of contract for defendants' refusal to pay the sum of $3.5 million, the commission due on this transaction; (2) breach of an implied brokerage agreement; (3) quantum meruit; (4) unjust enrichment; (5) breach of confidentiality; and (6) attorneys' fees.
Plaintiff moved for partial summary judgment on the causes of action for breach of contract and attorneys' fees. In support, plaintiff submitted an affidavit by Malone asserting that under the clear terms of the agreement, plaintiff earned its commission because it introduced defendants to the seller, and that the entity defendants' admission in response to plaintiff's notice to admit warranted judgment in its favor on those claims. Plaintiff noted that defendants received the benefit of an introduction to the properties by plaintiff, as well as the benefit of plaintiff's confidential and due diligence materials. Plaintiff further argued that defendants are all related and affiliated with one another as business partners, and joint venturers, within the meaning of the agreement.
In particular, plaintiff noted that the agreement bound not only E & M but also all its employees, officers, successors, assigns and agents, and all their related entities and affiliates. Plaintiff added that Irving Langer, Leibel Lederman, Aryeh Ginzberg, and Scott Katz were either employees, partners and/or affiliates of E & M.
Plaintiff stressed that in circumvention of the agreement, defendants used the confidential information plaintiff prepared and, acting through an entity they created, purchased the properties. In that regard, plaintiff noted that the address for each of the purchasing entities was the same, and was also the address of E & M. Regardless of which entities purchased the properties, plaintiff pointed out that all the purchasing entities were interrelated and owned and operated by the individual defendants who were bound by the agreement and who were introduced to the properties by plaintiff.
Defendants cross-moved for summary judgment dismissing all but the fifth cause of action (breach of confidentiality). In opposition to plaintiff's motion and in support of their cross motion, defendants submitted affirmations by Irving Langer, Michael Langer, Lederman, and Ginzberg, reiterating the above facts, and stating that neither Michael Langer nor E & M Associates purchased or had any equity interest in the properties. Defendants maintained that the definition of buyer in the agreement did not include the people and entities that actually bought the properties. Defendants also argued that plaintiff was not entitled to a commission, because it was not the procuring cause of the sale.
In reply, plaintiff asserted that all the defendant entities were related to, or in a partnership or joint venture with, E & M. Plaintiff added that Galil Management was a successor to E & M. Plaintiff argued that it did not need to show that it was the procuring cause of the sale, as under the terms of the agreement, upon introduction, the agreement called for the buyer to pay plaintiff a commission if and when it closed on the properties. Plaintiff also implored the court not to allow defendants to benefit from plaintiff's substantial work on the properties and then avoid paying a brokerage commission because they "cut" plaintiff "out of the deal."
Supreme Court denied plaintiff's motion for partial summary judgment, and granted defendants' cross motion for partial summary judgment to the extent of dismissing all causes of action save the one for breach of confidentiality. We now modify to the extent of reinstating the causes of action for breach of contract and attorneys' fees.
The parties' main disagreement is about whether the agreement was intended to bind the employees, officers, affiliates and successors of E & M. Plaintiff contends that the language following the signatures - "[s]ignatories each have apparent and actual authority to bind all employees, officers, successors, assigns and agents of all their related entities and affiliates to this letter agreement" - binds all defendants in this case.
In contrast, defendants point to the fact that the agreement defines the "Buyer" as "Michael Langer of E & M Associates." Defendants also note that the preamble specifically defines the the "Buyer's Representatives" as "directors, officers, employees, managers, members, partners, affiliates, potential joint venturers, representatives and advisors, including, without limitation, attorneys, accountants, but excluding all brokers, agents, and consultants," and that Section 2 of the agreement specifically refers to the confidentiality obligations of the Buyer's Representatives, but that Section 5 (the commission and attorneys' fees obligations) does not refer to the Buyer's Representatives.
Supreme Court found that the agreement was clear and unambiguous. In this regard, the court noted that the agreement defined the buyer as E & M and that Section 5 of the agreement only referred to the buyer's obligation to pay the commission upon purchase of the properties. The court found that the separate confidentiality obligation in Section 2, and the definition of Buyer's Representatives in the preamble, only bound officers, employees, and affiliates with regard to the confidentiality obligations of the agreement.
The court remarked that it could not "rewrite the definition of Buyer' to include these Representatives,'" and maintained that the parties could have included such Representatives in the definition of "Buyer" but did not do so. The court therefore found this omission to be intentional.
The court further discounted the broad language appearing after the signatures, stating that such language "[did] not alter or expand the definition of Buyer,'" but rather indicated that for parts of the agreement, such as the confidentiality provisions, Michael Langer had the authority to bind officers, employees, managers, members, agents, affiliates, and successors. Supreme Court's reading of the agreement was thus that only Michael Langer and E & M were bound by the commission clause.
"Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole" (Ellington v EMI Music, Inc., 24 NY3d 239, 244 [2014]; see also Greenfield v Philles Records, 98 NY2d 562, 569 [2002]; W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162—163 [1990]).
Crucially, an agreement can be deemed unambiguous "if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion'" (Greenfield, 98 NY2d at 569, quoting Breed v Insurance Co. of N. Am., 46 NY2d 351, 355 [1978]).
However, a contract is ambiguous when "read as a whole, [it] fails to disclose its purpose and the parties' intent"
(see Brooke Group v JCH Syndicate 488, 87 NY2d 530, 534 [1996]), or when specific language is "susceptible of two reasonable interpretations" (State of New York v Home Indem. Co., 66 NY2d 669, 671 [1985]). Moreover, the agreement must be read as a whole "to ensure that excessive emphasis is not placed upon particular words or phrases" (South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 277 [2005]).
Stated differently, the existence of ambiguity is determined by examining " the entire contract and consider[ing] the relation of the parties and the circumstances under which it was executed,'" with the wording viewed " in the light of the obligation as a whole and the intention of the parties as manifested thereby'" (Kass v Kass, 91 NY2d 554, 566 [1998], quoting Atwater & Co. v Panama R.R. Co., 246 NY 519, 524 [1927]). And, importantly, "[i]n construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless" (Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc., 63 NY2d 396, 403 [1984]).
We find that the agreement here is ambiguous with regard to which parties are bound to [*6]its terms. First, although the term "Buyer" is defined as "Michael Langer of E & M Associates," the agreement expressly provides, after the signatures, that Michael Langer has the authority to bind "all employees, officers, successors, assigns, and agents of all their related entities and affiliates to this letter agreement" (emphasis added). A literal reading of this sentence would bind the employees, successors, assigns etc. to all the terms of the agreement. Further, Malone averred in her affidavit that she had previously dealt with defendants in other transactions and knew that they often used LLCs to purchase properties, which might reflect why this language was added. Thus, while the definition of "Buyer" was initially narrow, this later clause is extremely broad, and the two are inconsistent.
Supreme Court's reading of the agreement renders the language following the signatures meaningless. Indeed, while the court fairly noted that the parties could have expanded the definition of "Buyer" from the outset, the extremely expansive clause regarding who was bound to the entire letter agreement cannot be ignored. Nor can it be said that such expansive language, which explicitly applies to the entirety of the agreement, is somehow limited to the confidentiality provisions of the agreement. The language clearly binds the other parties "to this letter agreement," with no limitation.
Further, while the agreement separately defined "Buyer's Representatives" in a broad manner, and then bound those representatives to the confidentiality provisions of the agreement, this does not mean that the parties did not also intend a broad reading of the parties bound to the commission clause, particularly given the language following the signatures.
The language following the signatures also indicates an intent to bind all future entities related to E & M, its employees and officers, as well as successors. Indeed, unlike the language in Ellington (24 NY3d at 246), which only used the term "any other affiliate," the language at issue includes the terms "successors," which demonstrates an intention to bind future affiliates of the contracting parties.
It is also necessary to consider the context and circumstances and the relations between the parties at the time the agreement was executed. Plaintiff had been conducting significant work on the properties for Singer since 2011. Indeed, plaintiff's work on the "Unwind Transaction" was crucial to making it possible for Singer to sell the properties. Plaintiff was also given the listing for the properties by Singer and made efforts to market the properties to interested parties.
In addition, plaintiff was familiar with Ginzberg and Irving Langer, and had worked on numerous deals with them. According to plaintiff, Ginzberg and Irving Langer were aware that plaintiff's policy was that its commission was paid by the buyer. Having previously dealt with Irving Langer and his partners at E & M, plaintiff also knew that they often formed new entities for the purpose of taking title on deals like this one. Further, plaintiff had also met with Irving Langer in 2011 to discuss acquiring a portfolio of properties in upper Manhattan, such as the properties.
Ginzberg and Lederman, employees and members of E & M, were interested in purchasing the properties since late 2011, and in 2012 E & M approached plaintiff about purchasing the properties. Michael Langer, an E & M employee, entered into the agreement on E & M's behalf, and he and his father, Irving Langer, the managing member of E & M, were given access to confidential material related to the properties and given a tour of the properties by plaintiff.
It should be noted that the confidential material received from plaintiff was vital to and necessary for the buyer to assess and determine a fair valuation of the properties. It would be impossible to negotiate the purchase of the properties without the substantial due diligence analyses and review of the properties, including marketing and valuation analyses, prepared by plaintiff. Within two hours of receiving this material, Langer forwarded the confidential attachments to Lederman, one of the principals who subsequently purchased the properties. [*7]Significantly, the agreement provided that plaintiff had introduced the seller to the buyer, and that the obligation to pay a commission upon contract closing would last for five years from the execution of the agreement, and it appears that the signatories were given broad authority to bind all employees, members, affiliates, agents, and successors, as previously described.
In sum, given the history between the parties, the language contained in the agreement, and the other relevant circumstances surrounding the execution of the agreement, it is certainly plausible that the parties intended to bind not only E & M to the agreement, but also all of its individual members and employees, as well as its affiliates and successors. Regardless, the conflicting language in the agreement makes it reasonably susceptible of more than one interpretation, and a trial is required to determine the parties' intent. Accordingly, the causes of action for breach of contract and attorneys' fees should not have been dismissed.
The causes of action for breach of implied contract, quantum meruit, and unjust enrichment were correctly dismissed because there is a valid and enforceable agreement covering the subject matter (see MG W. 100 LLC v St. Michael's Prot. Episcopal Church, 127 AD3d 624, 626 [1st Dept 2015]). The breach of implied contract claim fails because there is no evidence that defendants prevented plaintiff from closing and thereby receiving a commission (see Eastern Consol. Props. v Adelaide Realty Corp., 261 AD2d 225, 230 [1st Dept 1999], affd 95 NY2d 785 [2000]).
Accordingly, the order of Supreme Court, New York County (Kelly O'Neill Levy, J.), entered June 27, 2017, which denied plaintiff's motion for partial summary judgment on the causes of action for breach of contract and attorneys' fees, and granted defendants' motion for summary judgment dismissing the causes of action for breach of contract, breach of implied contract, quantum meruit, unjust enrichment, and attorneys' fees, should be
modified, on the law, to deny defendants' motion as to the causes of action for breach of contract and attorneys' fees, and otherwise affirmed, without costs.
All concur.
Order Supreme Court, New York County (Kelly O'Neill Levy, J.), entered June 27, 2017, modified, on the law, to deny defendants' motion as to the causes of action for breach of contract and attorneys' fees, and otherwise affirmed, without costs.
Opinion by Tom, J. All concur.
Manzanet-Daniels, J.P., Tom, Andrias, Webber, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 26, 2018
CLERK